FLORENCE LAYTON, Guardian of Rockwell Y. Layton, a Minor, Appellant, v. INTER-STATE BUSINESS MEN'S ACCIDENT ASSOCIATION, Appellee.

**Accident insurance:** PERMANENT INSANITY: EVIDENCE. In this action
1    upon an accident policy of insurance, in which the association was exempted from liability for disability or death resulting from bodily or mental infirmity, the evidence is reviewed and held insufficient to support a finding that at the time the insured committed suicide he was actuated by a temporary insane impulse, but rather that his insanity was of a permanent character, and therefore an infirmity.

**Same:** CONTRACTS: CONSTRUCTION: SUICIDE: STIPULATION AGAINST
2    LIABILITY. Where an accident company undertakes to insure only against specified forms of accident, its contracts will be construed most strictly against it and it will be held to the strict letter and spirit thereof; but a stipulation against liability for suicide, whether sane or insane, is competent and will be upheld.

**Same:** SUICIDE: PLEADING: ISSUE. The question of whether insanity
3    had any causative connection with the suicide of deceased was not in issue under an allegation that the suicide sprang from insanity, and was therefore not a question for the jury.

*Appeal from Linn District Court.*—HON. MILO P. SMITH, Judge.

WEDNESDAY, JANUARY 15, 1913.

ACTION on a policy of accident insurance. The insured died by suicide. At the close of the evidence there was a directed verdict for the defendant. Plaintiff appeals.— *Affirmed.*

*C. R. Sutherland* and *J. N. Hughes,* for appellant.

*Dunshee & Haines* and *Grimm & Trewin,* for appellee.

EVANS, J.—The policy in question was issued to George W. Layton on March 29, 1910. The beneficiary named therein was Brockwell Y. Layton, the minor child of the insured. The insured took his own life on May 25, 1910. Plaintiff is the mother of the beneficiary minor and brings action as his guardian. The policy sued upon promised indemnity only for "bodily injury effected solely by external violent and accidental means." If the insured intentionally took his own life, then his death was not accidental within the meaning of the policy. The appellant does not contend otherwise.

The contention of the appellant is that the insured was, insane at the time he took his own life, and that "said act causing death sprang from an insane impulse of a disordered and unsound mind." The evidence tending to show the insanity of Layton consisted of the history of his married life which began on September 18, 1907. He was forty years of age when married, and his wife, the plaintiff herein, a young lady of seventeen. Layton was a business man and gave no special evidence of anything abnormal in his business and ordinary social relations. In his relations with his wife, however, he disclosed brutal and fiendish characteristics. This began immediately after the marriage and never ceased until his death. He was of an intense, emotional temperament, alternately profuse with terms of endearment and savage in vituperation; overbearing, domineering, suspicious, jealous, and cruel. He accused and cursed and threatened and beat his wife repeatedly, and often quickly repented. He frequently threatened to kill her and injured her seriously at various times. This history is set out in the record in large volume, and we need not set it out in more detail. On one or two occasions his wife left him and returned again. In October, 1908, the child, Rockwell, was born. About the 1st of February, 1910, the wife left him again and brought an action for divorce in the city of Cedar Rapids. She then went to her parents in Missouri. He ascertained her whereabouts and followed her

1. ACCIDENT IN-
SURANCE: per-
manent insan-
ity: evidence.

a few days later and tried to induce her to return, but without avail. He returned to Iowa and to his business. May 25, 1910, he again appeared at the home of the wife's parents, (where she was) on a farm near Springfield, Mo., and again pleaded with his wife and demanded that she return. The meeting was a strenuous one in many ways. The final question put by Layton was, "Don't you love me any more?" She answered, "I cannot." He thereupon suddenly drew a revolver and shot her twice through the body. He then turned the revolver upon himself and took his own life.

The plaintiff, having put this history in evidence, propounded to two expert witnesses a hypothetical question including the entire history and obtained from each one an opinion that Layton was of "unsound" mind. The policy sued on contains a provision for nonliability of the company for disability or death resulting from accidental injury "if the occasion of the accident be bodily or mental *infirmity*." In order to avoid this provision of the policy, it is the contention of plaintiff that the insanity of Layton was temporary and momentary only, and that it lacked the quality of permanency or continuity which is said to inhere in the meaning of the term "infirmity." It is argued that, though insanity is ordinarily a mental infirmity, yet, where such insanity is only a sudden insane impulse produced momentarily by some overwhelming cause, and where it passes away with the passing of the cause, it is not an "infirmity." It is further argued that it would have been competent for a jury in this case to have found that Layton was insane at the mere moment of shooting, and yet fail to find that he had been insane before.

Whether the distinction urged could be sustained in the light of any supposed evidence, we will not stop to consider. What is clear to us is that the evidence in this record will not permit the distinction. The hypothetical question upon which plaintiff took the opinion of her experts included Layton's entire conduct for two years and a half. To this ques-

tion the expert witnesses gave their opinion that Layton was of "unsound mind." In explanation of such opinion they further testified that his mind was unsound "all the time." Mr. Spangler was a witness on this question. He was an attorney who had been employed by Layton to defend the divorce case, and he consulted with him frequently from February to April. Plaintiff proved by this witness that Layton's mind was unsound at that time. The same is true of the testimony of Mr. Allen, an attorney of Springfield, Mo., who was consulted by Layton on his first trip to Missouri in February. Layton told Allen at that time that if his wife would not live with him she should not live at all. This witness testified that he was mentally unbalanced at that time.

It was subsequent to this time that Layton took out the policy now sued on. In the light of this testimony it would have been very insincere for the plaintiff to ask a jury to find that Layton was insane at the moment of the shooting and not before. A jury would not be justified in such a finding. It is clear, then, that the situation presents two horns upon one of which the plaintiff's case is necessarily impaled.

The defendant undertakes to insure only against specified forms of accident. The courts are disposed to construe its policy most strictly against it and to hold it to the letter

2. SAME: con-
tracts: con-
struction: sui-
cide: stipula-
tion against
liability.

and spirit thereof. But we have held it competent to stipulate against liability for suicide whether "sane or insane." *Scarth v. Security Mutual Ins. Co.,* 75 Iowa, 346. See also, *Bigelow v. Insurance Co.,* 93 U. S. 284 (23 L. Ed. 918); *Streeter v. Life & Accident Soc.,* 65 Mich. 199 (31 N. W. 779, 8 Am. St. Rep. 882). Judicial ingenuity should not be strained to avoid such provision. To recover indemnity for intentional suicide not only works an injustice, but it operates as an incentive to suicide and to the fraudulent procurement of insurance by persons contemplating such a course.

It is further urged by appellant that, even though the

alleged insanity of Layton be deemed a mental infirmity within the meaning of the policy, yet it was for the jury to say whether it had any causative connection with the suicide. It is sufficient to say that the plaintiff's petition expressly alleged, as we have above quoted, that the act of suicide "sprang" from Layton's insanity.

3. SAME: suicide:
pleading:
issue.

It is our conclusion that upon the evidence in this record a verdict for the plaintiff could not be sustained. The trial court therefore properly directed a verdict for the defendant, and its order is *Affirmed.*