# SUTTON v. OTIS ELEVATOR CO. et al., and three other cases.

No. 4305. Decided April 20, 1926. Rehearing Denied Sept. 22, 1926
(249 P. 437.)

86

88

*Van Cott, Riter & Farnsworth* and *Richards & Richards,* all of Salt Lake City, for appellant.

*C. A. Gillette* and *Dey, Hoppaugh & Mark,* all of Salt Lake City, for defendant Bonneville Hotel Co.

*Willard Hanson,* of Salt Lake City, for respondents.

94

THURMAN, J.

These actions were instituted to recover damages for personal injuries caused by the fall of an elevator in the Newhouse Hotel, owned and operated by the defendant Bonneville Hotel Company in Salt Lake City, Utah.

The defendant Otis Elevator Company, as an independent contractor, in the month of September, 1920, installed two hoisting cables in what is designated as No. 2 elevator in said hotel, and on the 21st day of March, 1922, while said elevator was loaded with numerous guests of said hotel, the hoisting cables of said elevator parted at the cones, by reason whereof the elevator dropped from a point near the mezzanine floor to the basement of said hotel, a distance of approximately 35 feet, thereby causing the injuries complained of. There were 11 persons on the elevator at the time it fell, most of whom were more or less injured. Separate actions were instituted by the parties injured, in the district court of Salt Lake county, to recover damages for the injuries sustained. The first action, by Mr. Elmer Berg, was instituted against the Bonneville Hotel Company, alone, and judgment recovered. Another action was by Mrs. Gertrude Berg against both the elevator and hotel companies and judgment was recovered against both. The elevator company appealed to this court and the judgment was affirmed. *Berg v. Otis Elevator Co.*, 64 Utah, 518, 231 P. 832.

The four cases appearing in the title were each tried separately in the court below, and judgment recovered by the plaintiffs against both of the defendants, from which judgments the elevator company appeals. By stipulation of counsel and leave granted by this court these cases were argued together and submitted at the same time. Questions peculiar

to each case will be separately considered and disposed of, after determining the questions common to all the cases.

It is admitted by appellant in all of the cases that the parties injured by the fall were guests of the hotel; that the elevator was operated by electric power; that on the elevator in question there were two hoisting cables, attached to cones at the end thereof, which cones were then and there placed in crossbars or channel irons at the top of the elevator cage. It is also admitted by appellant that the work of installing said cables in September, 1920, was done by its employee, one Clark, who was then and there instrusted with said work and commanded to do and perform the same; that appellant and Clark knew that the elevator was used for carrying and conveying the guests of said hotel, and that the work of installing the cables was to be performed in the skillful manner usual for that kind of work.

In each of the pending cases the complaint of the plaintiffs is against the Otis Elevator Company, William N. Clark, and the Bonneville Hotel Company. Paragraph IV alleges the manner in which the cables ought to have been attached to the cones. In paragraphs V and VI of all of the complaints the manner of doing the work is alleged and the negligence upon which the plaintiffs rely. Paragraphs V and VI are as follows:

"V. That the said defendant Otis Elevator Company, for and in consideration of certain payments made to it by the said Bonneville Hotel Company, undertook to keep, maintain, and repair the said elevators in the said Newhouse Hotel aforesaid, and that in the month of September, 1920, in consideration of the payments made to it by the said Bonneville Hotel Company aforesaid, the said Otis Elevator Company aforesaid undertook to and did install on one of the elevators therein, to wit, on that certain passenger elevator known and called No. 2 elevator, two hoisting cables, attached to the cones at one end thereof, and which cones were then and there placed in said crossbars or channel irons at the top of the elevator cage, and plaintiff alleges that the work and labor of installing the said cables aforesaid was then and there performed by the said defendant Clark, who was then and there an employee of said defendant elevator company, and was then and there by it intrusted with and commanded to do and perform said

work and labor aforesaid; and plaintiff alleges that the said defendants and all of them then and there well knew, when they attached the said cables and cones aforesaid, that the said elevator was used for the carrying and conveying of guests of said hotel and for practically no other purpose.

"VI. Plaintiff further alleges that it was the duty of the said defendants, in attaching the said cables to the said cones aforesaid, to properly bend the wires at the ends of said cables, where the said cables were attached to said cones, and to insert proper and sufficient babbitt or other metal for the purpose of holding said cables in said cones, and plaintiff alleges that, unless the said cones and cables were properly attached to each other, there was great and grave and imminent danger of the said cables parting in said cones and pulling loose therefrom, and thus causing the said elevator to drop, all of which the said defendants well knew; and plaintiff alleges that, notwithstanding the duty of the said defendants in the premises, they then and there carelessly and negligently attached the said cables to the said cones aforesaid, and then and there carelessly and negligently failed to use sufficient babbit or other metal for the purpose of attaching the said cables to the said cones aforesaid, and then and there carelessly and negligently and improperly bent the wires of said cables where the same were attached to said cones, so that the wires of said cables were greatly weakened, damaged, and broken, and then and there carelessly and negligently attached the said cable to the said cones, so that there was great and grave and imminent danger of the said cables parting and breaking in said cones and pulling loose therefrom; and plaintiff alleges that the said defendants then and there well knew the careless and negligent manner in which the said cables were attached to the said cones, and then and there well knew that there was great and grave and imminent danger of the said cables breaking in said cones and separating therefrom, and then and there well knew that the said elevator was to and would be used by the guests of said hotel aforesaid, and then and there well knew that, by reason of the manner in which said cables were attached to said cones as aforesaid, said elevators would, in the usual and ordinary operation of the same, be likely to fall, and that the guests of said hotel using the said elevators would be seriously injured."

Appellant denies that the work was improperly done, and denies any and all acts or omissions charged as negligence, and that said cone attachments as installed were imminently dangerous when installed.

Each of the cases was tried to a jury. The first six assign-

ments of error are common to all of the cases. The following abridgment contains the substance of these assignments:

(1) Insufficiency of the evidence to prove appellant's negligence as proximate cause of the injury.

(2) Insufficiency of the evidence to prove that appellant's negligence was the proximate cause of any condition of imminent danger existing in the cone attachment at the time they were completed and accepted by the hotel company.

(3) Insufficiency of the evidence to prove that at the time of the completion of said cone attachments and acceptance by the hotel company said hotel company did not know, or upon reasonable ispection then and thereafter prior to the accident would not have discovered, any condition of imminent danger existing in said cone attachments at the time of their completion and acceptance thereof by the hotel company.

(4) Insufficiency of the evidence to prove that at the time of the completion and acceptance of said cone attachments appellant knew or should have known that said cone attachments, or either of them, were in a condition of imminent danger, or that there was imminent danger that the cone attachments, or either of them, would break or the cable part therefrom, or that said elevator would fall while in the service for which it was intended, as a result of defects or imperfections in said cone attachments.

Assignment No. 5 is substantially the same as assignment No. 4.

(6) Insufficiency of the evidence to prove that the cone attachments, or either of them, were in a condition of imminent danger at the time of their completion and acceptance, or that at said time there was imminent danger that said cone attachments, or either of them, would break, or that the cable would part therefrom in the service for which the elevator was intended, as a result of any defects or imperfections in said cone attachments, or either of them.

Before discussing the merits of these assignments, it is

necessary to determine what was decided by this court in the case of *Gertrude Berg v. Otis Elevator Company,* to which reference has heretofore been made. Appellant's counsel in the instant case accept the law as enunciated in that case and say in their brief: "We will squarely stand upon the law as announced in the Gertrude Berg decision." It may tend to simplify our efforts in the instant case if we first determine to what extent, if any, the Gertrude Berg Case is stare decisis. Notwithstanding she was injured in the same accident and by the same cause or causes as were the plaintiffs here, the records of the trials may, nevertheless, be substantially different. It is, in effect, contended by appellant that insufficiency of the evidence to justify the verdict was not assigned as error in the Gertrude Berg Case, and that therefore the decision in that case did not determine that question. It is further contended that in any event the records in the pending cases are wholly insufficient to justify the verdicts in the particulars mentioned in the six assignments under review.

In the Gertrude Berg Case the appellant Otis Elevator Company assigned as error the refusal of the court to direct a verdict for the defendant. The grounds for its motion for a directed verdict were in substance as follows:

(1) The uncontradicted evidence shows that the elevator, at the time of the installation of the cables, was not inherently or imminently dangerous.

(2) The uncontradicted evidence shows the Otis Elevator Company did not knowingly install the cables in such a negligent manner as to render said elevator imminently dangerous, and it was not by said installation rendered imminently or inherently dangerous, to those riding upon it.

(3) The plaintiff has failed to show by any evidence that the elevator company installed the cables in question in such a negligent manner as to render the elevator imminently dangerous to persons riding thereon.

(4) The plaintiff has failed to prove by any evidence that the elevator company was negligent in any of the particulars

charged in the complaint, or that any act of said company was the proximate cause of the injury.

(5) The uncontradicted evidence shows that the cables parted or pulled apart by reason of crystallization or fatigue, caused by forces applied to said cables after the control and possession thereof passed from the elevator company.

We have selected from the assignments of error in the Gertrude Berg Case only such as may reflect some light upon the question immediately under review. It is not our purpose to review the evidence in that case for the purpose of making comparison. We will, however, quote from the opinion of the court sufficient to indicate the character of evidence considered and the decision of the court thereon. The complaint in that case was substantially identical with the complaints in the pending cases. The issues made by the pleadings are substantially the same. At 64 Utah, 522, 523, the court states the substance of the pleadings, following which it considers the effect of the evidence. We quote the following from page 523 (231 P. 834) :

"On behalf of respondent, evidence was adduced tending to prove that the cables had been improperly attached; that the work was done by William N. Clark, an employee of the elevator company, who knew that his work had not been properly done; that the defective installation made the elevator liable to fall at any time, and that the cables parted at the time of the accident because of the defective and negligent manner of attaching them to the cones; that the elevator, when falling, reached a speed of about 350 feet per minute, and that the safety devices would not operate until after a speed of about 490 feet per minute had been attained by the falling elevator; that the defective installation was not discoverable by inspection and was unknown to the defendant hotel company; that the elevator upon which the cables were installed was a Von Emon elevator and no part was of defendant elevator company's make; that when installed the cables and elevator were delivered to and accepted by the hotel company, and operated for 18 months thereafter and until the date of the accident, March 21, 1922. Testimony was adduced tending to support the material allegations of the complaint and sufficient to make a prima facie case in favor of plaintiff."

Again, at pages 528 and 529 (231 P. 836), the opinion reads:

"Appellant's counsel review and discuss the evidence with much detail, claiming that the evidence conclusively shows that the cables were properly installed; that the proximate cause of plaintiff's injury was the failure of the hotel company to equip and maintain on the elevator efficient safety devices in good working condition and to properly operate, inspect, and repair the elevator; and that unusual and unequal strains, shocks, and stresses from the operation of the elevator caused the cables to crystalize and break.

"Without reviewing the evidence in detail, it is sufficient to say that respondent's testimony tended to prove that the installation of the cables was defective, and done in such a manner as to make the elevator imminently dangerous to the hotel guests, who the appellant knew would use it; that appellant knew of the defective and dangerous condition of the cables; that the hotel company had no knowledge of the defective condition; that the defective work done by appellant was so concealed that it could not have been discovered by reasonable inspection; and that the cables parted and the elevator fell as the resut of the defective and improper installation of the cables. These ultimate facts brought the case within the rule of liability and required the submittal of the issues to the jury.

"On behalf of appellant, evidence was presented contradicting all that which had been produced by the respondent; evidence was adduced by appellant to the effect that the cables were properly installed; evidence was produced tending to prove that the elevator had been improperly and recklessly operated from the time of the installation of the cables till the time of the accident, a period of eighteen months; appellant produced experts who testified that the use to which the cables and elevator attachments were subjected had caused crystallization of the cables at the point where they parted and that this crystallization was the cause of the breaking or parting of the cables; testimony was produced tending to show that the hotel company failed to install and maintain efficient safety devices and to properly inspect and repair the same. None of the testimony was undisputed. On every issue there was testimony pro and con. Thus respondent introduced expert testimony in contradiction to that produced by appellant on the question of crystallization, as to the manner of operating the elevator, as to the safety devices, and that if they were ineffective it was due to the negligence of appellant in repairing them. Throughout the whole of a prolonged trial, the testimony was conflicting. It was for the jury to decide what the truth was, and therefore the trial court did not err in submitting the issues to the jury."

It conclusively appears from the language quoted that the court in the Gertrude Berg Case responded to every assignment of error relating to the insufficiency of the evidence and found the issues against the appellant. The reason assigned by the court was that the evidence upon those issues was conflicting and therefore the verdict of the jury was conclusive. In so far then, as the evidence upon substantially the same issues is conflicting in the instant cases, if it is conflicting, we are bound to hold that the decision in that case is stare decisis. Especially is that true in these cases, as the validity of the decision in the case referred to is not challenged by appellant, but, on the contrary, is expressly admitted. Therefore the question next to be considered is: Is there a conflict in the evidence in the cases at bar in the following particulars:

(a) Was the installation of the cables so negligent and unskillful as to render the elevator liable to fall at any time in the service for which it was intended, thereby creating a danger that was imminent when the installation was completed and accepted by the hotel company?

(b) Did the fall of the elevator occur as a result of weakening of the cables by crystallization and fatigue arising from use or abuse in the service?

(c) If the installation was so defective as to render the instrumentality imminently dangerous in ordinary use, did the appellant have knowledge of that fact, or should it have known of it, at the time the installation was completed and accepted by the hotel company?

(d) Was the defective installation of the cables, if it was defective, the proximate cause of the injury?

(e) Knowledge or want of knowledge, actual or constructive, on the part of the hotel company.

Upon all of these particulars the jury found against the contention of appellant. In one form or another they were submitted to the jury, and its verdict in favor of respondent implies that in the opinion of the jury there was evidence to sustain the verdict. It is stoutly contended, however, by ap-

pellant, that in the particulars referred to the verdict is not sustained by the evidence. Appellant's counsel discuss the proposition from so many different angles that we are compelled to consider it somewhat by piecemeal, rather than as a single proposition. The evidence relating thereto is too voluminous to permit of but little more than our conclusions, drawn therefrom after a reasonably careful examination of the record.

In order to give point to some of the evidence to which we shall refer, it is necessary to make brief reference to a few facts that are not in dispute. It has already been stated that at the top of the elevator cage certain crossbars or channel irons were attached thereto, and that in the crossbars or channel irons were metal cones to which were attached the hoisting cables in question. It appears from the evidence that in the crossbars or channel irons are two holes, each large enough to contain one of the metal cones; that the cables were made of Roebling steel and each cable was five-eighths of an inch in diameter. It also appears that each cable was composed of 6 strands, of 19 wires each, and that within the cables was a hemp core; that the usual method of attaching the cables was to first draw the end of the cable through the hole in the crossbar, wrap the cable with wire the proper distance from the end to prevent the cable unraveling, and bend the wires inward into the cone. When this is accomplished, sufficient babbitt, or other metal, at the proper temperature, is poured into the cone, with the view of filling the empty spaces therein, so that the wire and the metal will form a solid mass. It is also stated that the wires should be free from dirt or grease; otherwise, the metal will not adhere to the wires. When the cone is thus attached to the cable, it is then drawn into the crossbar. There is substantial evidence to the effect that, when a cone attachment is thus made, it ought to last as long as other parts of the cable. The cable, when attached, passes upward and over a sheave wheel, thence down to a drum in the basement. Counterweight cables are also attached to the cones in the cross-

bar, to partially relieve the burden upon the elevator; but no question relating to that is involved in this appeal.

It cannot be consistently contended that, as far as the expressed opinions of witnesses are concerned, there is not a sharp conflict in the evidence upon all of the foregoing questions as to which insufficiency of evidence is assigned. Even the witness Clark, who performed the work of installation as an employee of appellant, sworn as a witness for appellant, was shown the cones in question, and testified, on cross-examination, that the work was a bad job; that it was not filled up as it should be; that the spaces in the cones should have been filled up with metal; that it was a bad job for the purpose for which it was intended; that it did not have the base it should have. He had testified to the same effect in the Elmer Berg Case, previously tried, and was of the same opinion in these cases. He further testified that it was not the kind of a job to perform for the purpose of carrying passengers; that for that purpose it was a bad job, and that he would not expect it to hold; that he would want the job done over; that when they are once attached you cannot inspect them; that he would discharge a helper that would do that kind of a job. He further testified that the babbitt used was not hot enough, probably to fill in a solid mass. The witness finally testified that he did not think the fastenings were proper for the purpose of carrying passengers in an elevator.

There was testimony of several witnesses on behalf of respondent to whom the detached cones were exibited to the effect that the cone attachments were not properly made; that the wires did not appear to have been properly and evenly bent into the cones; that there was not sufficient babbitt poured in to fill the empty spaces; that it appeared the wires had not been cleaned; that they were greasy and dirty. There was also evidence to the effect that the cones should have a base built thereon, so as to lengthen the cones and permit a longer bend of the wires. In fact, the opinion evidence of many of the witnesses was to the effect that the

attachment of the cables to the cone was of such character as to render the situation imminently dangerous at the time of the installation. There was also evidence that, when the cables are once installed, the method of attachment is not subject to reasonable inspection, because the conditions inside the cones cannot be observed while in place. There is also opinion evidence to the effect that the parting of the cables from the cones was not due to crystallization or fatigue.

As to the knowledge of appellant at the time the cables were attached to the cones that the work was negligently and carelessly done, so as to create a condition of imminent danger, respondent relies mainly on the testimony of Clark, who did the work for the elevator company. His knowledge is imputed to his employer. There is also evidence in the record to the effect that the hotel company did not know, at the time it accepted the installation from the elevator company, of the defects complained of, and could not have discovered them upon a reasonably careful inspection. On the other hand, upon all of the above-mentioned questions there is on behalf of appellant an abundance of evidence to the contrary; so much so that, if a verdict of the jury had been rendered in favor of defendant, it would be sustained, as far as insufficiency of the evidence is concerned.

It is of no consequence what our opinion may be as to the facts. If there is substantial evidence to sustain the verdict, this court is powerless to set it aside.

Appellant's counsel, in a most persuasive manner and with considerable force, stress the fact that the elevator was operated in regular service from September, 1920, to March, 1922, for as much as 18 hours per day before the accident occurred, and that that is conclusive evidence that the manner of attaching the cables to the cones was not imminently dangerous; that is, that the elevator was not liable to fail at any time on account of the defects complained of in the complaint. In view of this feature of

the evidence, it is vigorously urged that this court as matter of law should determine that the manner of attaching the cables to the cones was not the proximate cause of the injury. If the life of a cable in ordinary use was limited to a fixed, definite period of time, and it was shown in the instant cases that the cable lasted the full period before parting from the cones, the contention of counsel would be incontrovertible. But such is not the case here, and consequently we are bound to hold that the evidence referred to, in connection with other evidence in the cases, presented a question for the jury to determine. We therefore conclude that, as far as concerns the evidence thus far considered, appellant's assignments of error charging insufficiency of the evidence are not sustained. Upon those matters we are of opinion that the decision in the Gertrude Berg Case is stare decisis.

But there are other questions relating to the sufficiency of the evidence, which were not before the court in the Gertrude Berg Case, and were therefore not determined. There is evidence in the pending cases to the effect that the cones in question were too short to permit of sufficient bend in the strands or wires of the cables, and that the cones could not be lengthened by adding a base thereto, for they then would be too long to draw back into the crossbar. The evidence shows that the crossbar in question is within 3 or 4 inches of the top or canopy of the cage, and that the cones into which the wires were bent and the babbitt poured are $2\frac{1}{2}$ inches in length, about 2 inches in diameter at the base, and $1\frac{1}{2}$ inches in diameter at the top or small end. Respondent's contention that a base should have been added to the cones, so as to permit of a longer bend in the wires, was met by the statement that there was not sufficient space between the crossbar and the canopy of the cage to permit of adding to the length and that the fault of such condition was not attributable to appellant, as the elevator was of the Von Emon type, for which the appellant was in no manner responsible.

No doubt the general rule is that, if an independent contractor constructs or repairs a building or instrumentality according to a plan or design furnished him ■ by the contractee, the defect of the plan itself is not chargeable to the independent contractor, *Thornton v. Dow,* 60 Wash. 622, 111 P. 899, 32 L. R. A. (N. S.) 968. There may be exceptions even to this rule (see cases cited in the note to the above case at page 973), but they are not pertinent here.

The negligence alleged and relied on in the instant case is defective attachment of the cables to the cones furnished by the hotel company. That the cones were too short, or the proximity of the crossbar to the canopy of the cage too close, was not alleged as negligence. Neither did appellant allege such condition as a defense. The question was raised during the progress of the trial, in answer to the sugggestions that a base should have been built upon the cones, in order to give more length to the bend of the wires. In any event, we are of opinion appellant's contention is untenable for the reason that it appears that, even if an extension of the base was necessary, a half-inch extension, or even less, would have been sufficient. As before stated, the space between the crossbar and the top of the cage was 3 or 4 inches and the cones $2\frac{1}{4}$ inches in length so that it does not satisfactorily appear that the cones could not have been drawn back into the crossbar, if a base of one-half inch had been added.

Appellant's contention that the crossbar was too close to the top of the cage to admit of a base being added is hardly consistent with its contention that the base as well as the top of the cones, as the same were installed, were at all times capable of reasonable inspection by the hotel company. The instrumentality itself, including the crossbar, top of the cage, and the cones, were by stipulation exhibited to this court, and we are unable to say from personal examination that as matter of law the defects, if any, in the attachment, were discoverable upon a reasonably careful inspection.

The next question presented by appellant, and perhaps

the most difficult to determine, relates to an allegation made in plaintiff's complaint. We have already ■ quoted paragraph 6 of the complaint, in which the allegation is made. This question, like all others we have thus far considered, applies to all the pending cases. After alleging the negligence relied on and the imminent danger thereby created, the complaint then alleges as follows:

"That the said defendants then and there well knew the careless and negligent manner in which the cables were attached to said cones, and then and there well knew that there was great and grave and imminent danger of the said cables breaking in said cones and separating therefrom, and then and there well knew that the said elevator was to and would be used by the guests of said hotel aforesaid, and then and there well knew, by reason of the manner in which said cables were attached to said cones, as aforesaid, that said elevator would, in the usual and ordinary operation of the same, be likely to fall, and that the guests of said hotel using the said elevator would be seriously injured."

The point urged by appellant is that the above allegation by plaintiff is an admission that the hotel company knew of the negligence and the imminent danger thereby created at the time it accepted the work, and that said knowledge, under the rule announced in the Gertrude Berg Case, relieved appellant from liability for the injury.

It becomes necessary to again revert to the opinion in that case and determine therefrom the rule as to the liability of an independent contractor in cases of this kind. After quoting the general rule to the effect that an independent contractor is not liable for injuries to third persons with whom he has no contractual relations, occurring after he has completed his work and the same has been accepted by the owner with whom he contracted, the court (64 Utah, at page 525, 231 P. 835) says:

"The decided weight of authority supports the proposition that when an independent contractor has done work on an instrumentality and by his work makes the instrumentality imminently dangerous to those he knew would use it, he remains liable, even after the completion of

his work and its acceptance by the contractee, to third parties injured as the result of his negligence if the contractor knew or in view of the peculiar circumstances of the case should have known the dangerous condition by him created, and the contractee had no knowledge of the dangerous condition or defect which was so concealed that reasonable inspection by the contractee would not have discovered it" (citing cases).

On application for rehearing in that case appellant contended that a certain request which was refused by the trial court should have been considered. After holding that the question had not been argued at the original hearing and was therefore waived, and further that the request was improper, because it was not a complete statement of the law the court again at page 534 (231 P. 838) restates the position of the court, and apparently undertakes to make a complete statement of the law as to the liability of an independent contractor in this class of cases as follows:

"If a contractor does defective work, which renders the instrumentality dangerous, he becomes liable in damages to one injured, if he knew, or, under the particular circumstances, should have known, that the instrumentality was delivered to the contractee in a condition of imminent danger, and in a condition in which reasonable inspection would not have revealed the defect and danger."

Both appellant and respondent, as far as the record discloses, accept without question the rule declared in the Gertrude Berg Case. The question as to the effect of the allegation in plaintiff's complaint, above quoted, was not raised in that case, and was not argued, either orally or in the brief, and for that reason was not considered or determined by the court.

Notwithstanding the allegation in the complaint as to the knowledge of the hotel company, the plaintiffs in the trial of these cases, without objection, introduced evidence to the effect that the hotel company did not know and could not by reasonable inspection have discovered that the installation of the cables was careless and imminently dangerous. Appellant introduced evidence to the contrary, and one of

the questions to be determined is whether or not appellant, by its conduct in that regard, waived the point which it now urges the court to consider.

In opposition to appellant's contention, it is contended by respondent that the point raised by appellant is without merit for two reasons: (1) That the hotel ■ company denied the allegation of knowledge alleged in the complaint, and that knowledge or lack of knowledge was one of the litigated issues; (2) that the knowledge of the elevator company was imputed to the hotel company, and therefore it was proper to allege that the hotel company, as well as the elevator company, knew of the defects complained of. Respondent cites no authority in support of either of these contentions. But the omission to do so is not conclusive. If the contentions are supported by reason, and are not controverted by reasons more persuasive, the contentions should be sustained.

As to the first contention made, that the hotel company denied the allegation of knowledge and it thereby became a litigated issue, the contention would be more plausible if the hotel company had introduced the evidence showing lack of knowledge, or means of knowledge; but such was not the case. The evidence was introduced for and on behalf of the plaintiff, and it was in the very teeth of the allegations of her complaint.

As to the second contention it is sufficient to say that, if the knowledge of the elevator company was imputable to the hotel company, then the question arises: How can it be contended, under the rule announced in the Gertrude Berg Case, that the elevator company is liable for the injury? But the writer, without further information upon the question, is not prepared to concede that the knowledge of the elevator company was imputed to the hotel company. If it was, then, under the decision in the Gertrude Berg Case, the plaintiffs here have pleaded themselves entirely out of court, and cannot amend so as to state a cause of action.

The general rule undoubtedly is that a party is bound by

admissions made in his pleadings and that his adversary can take advantage thereof at any stage of the case whether in the trial court or on appeal. Appellant's counsel call our attention to authorities in support of the rule: 2 *Jones, Blue Book of Ev.* § 272, p. 503; 1 *Ency. of Ev.* p. 613; *Brown v. Hartford, etc., Co.,* 108 Okl. 90, 234 P. 352; *Whelton v. Chicago, etc., R. Co.,* 189 Iowa, 918, 179 N. W. 140; *Walsh v. Walsh,* 285 Mo. 181, 226 S. W. 236; *Grant's Pass, etc., Co. v. Calvert et al.,* 71 Or. 103, 142 P. 569; *Dodge v. Chambers,* 43 Colo. 366, 96 P. 178; *Mulford v. Estudillo,* 32 Cal. 131; *Rarey v. McAdoo,* 28 N. M. 14, 205 P. 731; *Layton v. Inter-State, etc., Ass'n,* 158 Iowa, 356, 139 N. W. 463; *Smith v. Vickery,* 235 Mo. 413, 138·S. W. 502; *P. U. C. of Utah v. Jones,* 54 Utah, 111; 179 P. 745; *Sullivan v. Inhabitants of Town of Ashfield,* 227 Mass. 24, 116 N. E. 565. In addition to the foregoing, see the following: *Standard Ency. of Procedure,* vol. 21, p. 412; 22 C. J. p. 331; *Rogers v. Brown,* 15 Okl. 524, 86 P. 443; *Lee v. Little,* 81 Okl. 168, 197 P. 449, 187; *Sievers v. Martin* (Ky.), 82 S. W. 631; *East Tenn., V. & G. R. Co. v. Kane,* 92 Ga. 187, 18 S. E. 18, 22 L. R. A. 315.

In *Jones, Blue Book of Evidence,* supra, it is said:

"Under familiar rules, the pleadings in the pending case are more than admissions. They are, until changed, conclusive upon the parties filing them. Although pleadings in the pending case are sometimes formally offered as admissions of the adversary, it is generally held that they may be referred to and commented upon by counsel without such offer."

In *Standard Ency. of Proc.,* supra, the author says:

"Generally a party is bound by the statements of facts in his pleading, and will not be heard to controvert them."

In *Whelton v. Chic., M. & St. P. Ry. Co.* (Iowa), supra, the fourth headnote reads:

"Allegations in a petition bind the one who makes them, and they must be taken to be true as against him, when their truth militates against him, though there was evidence to the contrary."

One of the most complete statements of the rule is found in *Rogers v. Brown,* supra. We quote from the opinion:

"Pleadings in a civil case are not merely matters of form, but they are solemn declarations of the party. They present to the court what he claims the facts to be, and, upon such statement, asks it to grant him relief, and he is bound by every statement against his interest made therein, and will not be heard to question the correctness thereof, so long as they remain a part of the record; and they may be taken advantage of by the adverse party at any stage of the case, either in the trial court or on appeal, if they are preserved in the transcript or case-made. *Lane Implement Co. v. Lowder & Manning,* 11 Okl. 61, 65 P. 926. The facts in a case never change, nor will a party be allowed to change his recitation of the facts simply because it may happen to be advantageous to do so. If either he or his counsel in preparing a pleading have made a mistake, and included statements which amount to admission against his interest under a misapprehension of what the facts really were, he should apply to the court for leave to withdraw such admissions or pleading, and, if required to do so, make a showing of good faith in support of such application; and the trial court should use its discretion in furtherance of justice in passing upon such matters."

*Lee v. Little,* supra, a case from the same state, holds to the same effect, and cites and approves the rule announced in *Rogers v. Brown.* The authorities above cited no doubt state the general rule. It mst be true that a party, whether plaintiff or defendant, is bound by his pleadings, especially the plaintiff in pleading the basis of his cause of action. There are, of course, exceptions to the rule thus broadly stated. The question is: Does the instant case fall within the exceptions? In *Standard Ency. Proc.* vol. 14, at pages 524, 525, it is said:

"The issues of a case are defined by, and confined to, the pleadings. Ordinarily matter not put in issue by the pleadings cannot be litigated. In determining the issues made in the case, the pleadings, and not the evidence, must be looked to. But the parties by their conduct on the trial may include a disputed fact within the issues of the case, although such fact does not appear at issue in the pleadings."

The same authority in volume 21, at pages 411, 412 states the rule as follows:

"The admission of evidence under a defective allegation, without objection, will generally operate as a waiver of the defects; and the same rule has been applied where the complaint omits some fact essential to a cause of action, but which might be supplied by amendment, although there is authority to the contrary."

The two excerpts quoted from Standard Ency Proc. are quoted with approval by this court in *Bush v. Bush et ux.,* 55 Utah, at page 245, 184 P. 823. That was an action in claim and delivery, and the complaint failed to allege in any manner or form that the plaintiff was entitled to the immediate possession of the property. Verdict and judgment thereon were entered in favor of the plaintiff. After judgment defendant moved to dismiss the complaint on the grounds that the complaint "does not state facts sufficient to constitute a cause of action." The motion was denied and defendant appealed. The judgment was affirmed, for the reason that the case was tried without objection on the theory that the right of immediate possession of the property was in issue, and submitted by the court to the jury upon the same theory. The court in that case gave the jury a proper instruction on the assumption that the right of the plaintiff to immediate possession of the property was in issue in the case. If in the pending cases, or any of them, it appears that the cases were submitted to the jury on the theory deducible from the evidence admitted without objection, we are of opinion that the error complained of was waived by appellant, and that it has not been prejudiced by reason thereof. What effect this conclusion may have upon all or any of the cases involved will depend entirely upon the character of the instructions given by the court. These will be considered in connection with the assignments of error peculiar to each case.

Before leaving this branch of the case, relating to errors common to all the cases, it is pertinent to briefly consider some fundamental differences of opinion that have arisen during the course of our deliberations.

It is contended that the Gertrude Berg decision does not

hold that knowledge of the independent contractor of the danger created by him is essential to the establishment of his liability; that he is only required to know that the conditions are such that if he negligently performs the work the danger will be imminent; that want of knowledge on the part of the contractee of the danger created by the contractor is not essential to the establishment of the contractor's liability to third persons for injury; that in any event, if knowledge on the part of the contractee, in a case of this kind, is material to be considered at all, it is available as a defense to the contractor only; that exceptions to the failure to give proper instructions upon the matters above referred to were not available to appellant, unless a request was made therefor; that the general law, independent of the decision in the Gertrude Berg Case, does not make knowledge of the contractor and lack of knowledge of the contractee essential elements in establishing the contractor's liability in a case of this kind; that to require plaintiff to make such proof might be seriously inconvenient, and possibly bar his action; that the admission in plaintiff's complaint that the hotel company had knowledge of the danger created by appellant's negligence is now raised for the first time as a bar to the action.

A proper determination of just what rule was established by the decision in the Gertrude Berg Case will go far towards solving the principal questions under the foregoing subdivisions. Before referring to the decision itself, a brief review of some facts connected with and leading up to it may shed light upon the question under review. The accident in which the injuries in question occurred happened in March, 1923. The actions were all commenced prior to the decision in the Gertrude Berg Case. The Sutton Case and the Snow Case were tried and judgment entered before that decision was announced. Many of the questions raised in the trial court were of the first impression in this jurisdiction. Owing to the doubt and uncertainty existing, not only in the minds of counsel on both sides, but of the trial court as well,

there was an understanding reached between the parties that the Snow Case and Waters Case would not be tried until the Gertrude Berg Case was determined by this court. Furthermore, the appeal in the other two cases which had been tried was to be held in abeyance awaiting that decision. This understanding between the parties and the court below was made known to this court before the Gertrude Berg Case was argued and submitted for our determination. So that, in every sense of the word, the Gertrude Berg Case was understood to be a test case, the decision of which and the rule established thereby was to be a rule for the determination of cases then actually pending in the court below. When the decision in the Gertrude Berg Case was handed down, the E. H. Berg Case and the Waters Case were tried under the rule announced in the Gertrude Berg Case.

It is interesting to know just how that decision was interpreted by the trial court, as well as by the distinguished counsel on both sides of the cases. The trial court, in each case instructed the jury, in effect, that before it could find the appellant liable for the injury it must find that appellant knew or under the circumstances should have known, of the danger *created by it*, and that the hotel company did not know of such danger, or could not discover it upon reasonable inspection. Such was the interpretation of the rule announced by this court, as it appeared to the mind of the trial court, in the trial of the cases. No objection was made to these instructions, and no exceptions were taken. To all appearances they were accepted without question by counsel on both sides of the cases as a correct interpretation of the rule announced by this court. If, however, there could be any possible doubt in our minds as to just how counsel on both sides viewed the decision in the Gertrude Berg Case respecting the immediate question, that doubt is resolved into an absolute certainty by reference to the respective briefs of counsel filed in the cases. As we have before stated, counsel for appellant say: "We will squarely stand upon the law announced in the Gertrude Berg decision." Their

contention all through the cases was in line with the view now held by the trial court, and the majority of this court. Counsel for respondent, in his brief, says:

"We agree with the appellant that, if it could be said that the Bonneville Hotel Company knew of the defective attachment of the cones in question, or by reasonable inspection should have discovered it, then under the decision in the Gertrude Berg Case the Otis Elevator Company would be exempt from liability."

It is not often that counsel on both sides of a litigated question, upon which disputed liability depends, agree as harmoniously as do counsel in these cases upon the interpretation to be given the decision in the Gertrude Berg Case. We can account for it on no other theory than that the language of the decision is so plain and unambiguous, so consistent with the philosophy of the law of negligence and the doctrine announced by the best-considered cases, that there can be no reasonable ground for dispute. It is possible, of course, that the decision in that case does not reflect the weight of authority upon the question we are considering, a proposition which I do not concede; but the decision is nevertheless a solemn, deliberate decision of this court, rendered under circumstances somewhat extraordinary, as I have endeavored to show. The parties in the case are not complaining of the decision; neither side is seeking to have the decision overruled. In these circumstances, unless the decision is fundamentally and egregiously wrong, it is doubtful whether the question here raised should be seriously considered by the court, and for that reason I am not disposed to occupy space in reviewing cases arising in other jurisdictions, especially as the authorities upon the question are reviewed and distinguished by my associate, Mr. Justice STRAUP, who, upon this question, concurs with the writer.

The contention that an independent contractor is liable to a third person for an injury in this class of cases, if he merely has knowledge that the nature of the thing and its intended use is such that the instrumen-

tality will be imminently dangerous, if defectively repaired or constructed, has very little, if any, authoritative support, and still less support in reason. The contention is in the very teeth of the Gertrude Berg decision, wherein the language is, "should have known the dangerous condition *by him created.*" 64 Utah, 525, 231 P. 832. The same thought is expressed on rehearing, at page 534, where the rule, in substance, is again repeated. We are clearly of opinion that this rule, so clearly and unequivocally announced in the Gertrude Berg Case decision, is not in conflict with any well-considered case.

But it is contended that, in any event knowledge of the contractee of the danger created by the contractor is matter of defense only; that it is not incumbent upon plaintiff to prove want of knowledge as an element of liability. I am of opinion that it *is* an element of liability, under the Gertrude Berg decision, and cases therein cited.

It is also suggested that to require plaintiff, in a case of this kind, to make proof of a contractee's want of knowledge might be inconvenient and in many cases bar recovery. It is not an unusual thing for litigants in court to fail for want of proof. However, no one should desire the establishment of a rule that would seriously hamper either a plaintiff or a defendant in obtaining evidence to establish his cause of action or defense. It seems, however, that the solicitude manifested for fear a plaintiff in this kind of a case may not be able to obtain proof of the contractee's want of knowledge is without substantial foundation. In the very nature of the case the plaintiff will usually have the sympathy, good will, and assistance of the contractee, as in the case at bar, for the reason that the contractee, who is usually liable in any event, will be vitally interested in establishing the contractor's liability, hoping thereby to establish a cause of action in his own favor against his contractor, whose negligence may have caused the injury.

It is also contended that exceptions to the failure to give

proper instructions are not available to appellant because such instructions were not requested. Comp. Laws Utah 1917, § 6802, subd. 4, in part reads:

"When the evidence is concluded, the court shall instruct the jury in writing upon the law applicable to the case."

If it is the duty of the court to instruct the jury as to the law of the case, it is certainly its duty to give proper instructions. If it does not do so, and proper exceptions are taken, the error is available on appeal, unless it is harmless.

In some of the cases at bar, as will hereinafter appear, the court undertook to instruct the jury as to the law, as was his mandatory duty under the statute, but the instruction given was manifestly defective, under any reasonable theory of the law. Appellant took exceptions, both general and special, pointing out the defect, but the same were disregarded. This was the proper course, in such case, for a party to pursue, although the same result might have been reached by presenting a request for the instruction desired, and taking exception to its refusal. The latter course, however, is more hazardous for obvious reasons. These reasons are clearly made to appear in the opinion on rehearing in the Gertrude Berg Case to which reference is made in the dissenting opinion.

The suggestion is also made that the question raised in these cases by appellant as to the admissions made in the complaints was not raised in the court below and is here raised for the first time. It is stated by some of the authorities cited by us, when dealing with the effect of admissions, that such question is of such deep significance in a case that it may be raised at any stage of the case, even on appeal. The respondents here have at least had the opportunity of being heard on these appeals. That is more than the appellant will have had upon some of the questions we are now considering, and that suggests the thought that, when this court was considering the Gertrude Berg Case, which was understood at the time to be a test case, to determine rules

by which some of the cases now pending should be determined, why were not those new questions then called to the attention of the court? Inasmuch as the parties themselves have not raised the questions, or some of them, at least, it is matter of grave doubt whether they should now be considered, unless this court, in spite of the opinions of counsel on both sides and the court below, should reach the conclusion, as before stated, that the decision in the Gertrude Berg Case is fundamentally wrong. Even in that event the appellant should have its day in court, which it has not had on some of the questions here presented.

In conclusion, I am clearly of opinion that the decision in the Gertrude Berg Case was right, that the rules therein announced are correct, and that counsel and the court below, in the trial of the cases subsequent to that decision, correctly interpreted its meaning as far as the principal questions here are involved.

### Errors Peculiar to the Sutton Case.

I. In the Sutton Case it is contended that the court erred in denying appellant's motion for judgment upon the special findings of the jury. The court submitted two questions to the jury, one of which was as follows:

"Was the elevator, at the time of the accident, falling at a speed sufficient to enable a standard, efficient safety appliance to operate and stop the car before it reached the bumpers?"

To this question the jury answered, "Yes."

The court, in instructions Nos. 7 and 11, had already instructed the jury:

(7) "You are instructed that an intervening cause, such as will relieve from liability for injury, is an independent cause which intervenes between the alleged wrongful acts and the injury, and produces a result which otherwise would not have happened."

(11) "If you believe from the evidence in this case that the Otis Elevator Company was negligent in installing the cables on No. 2 elevator at the Newhouse Hotel on or about September 17, 1920, and that

the Bonneville Hotel Company, several months thereafter, was negligent in failing to provide and equip and maintain said elevator with an efficient safety device in good working order, and that the negligence of the Bonneville Hotel Company was independent of, and not connected with, the negligence of the Otis Elevator Company, then the negligence of the Bonneville Hotel Company became an efficient intervening cause of the injury, and broke the causal conection between the negligence of the Otis Elevator Company and the injury, and your verdict should be in favor of the defendant Otis Elevator Company, no cause of action."

After the jury rendered its verdict in favor of the plaintiff, appellant moved the court to vacate and set aside the verdict on the grounds that it was inconsistent with the special findings of the jury; that the special finding showed conclusively that the proximate cause of plaintiff's injury was due to the negligence of the hotel company in failing to properly equip and maintain the elevator with a safe, efficient safety device, such failure being the intervening cause, and therefore the proximate cause of the injury. The motion of appellant was denied.

The question submitted to the jury was defective, in not including the element of knowledge, actual or presumptive, on the part of the hotel company. The elevator might have been equipped with a safe, efficient safety device, and at the time of the accident failed to function for some reason unknown to the hotel company, and that, too, without any negligence on its part. In such case the proximate cause of the injury would not be due to any negligence of the hotel company. It does not satisfactorily appear to the court that the general verdict is inconsistent with the special findings.

II. Assignments Nos. 12, 13 and 14 will be considered in connection with the Snow Sase, in which a similar question is involved.

III. Assignments Nos. 17 and 18 challenge the validity of instruction No. 12. That instruction reads as follows: ▉

"If you believe from the evidence in this case that the Otis Elevator Company was negligent in installing the cables on No. 2 elevator, at

the Newhouse Hotel, on or about September 17, 1920, and as a result thereof the elevator was rendered imminently dangerous to guests and passengers thereon, and that such negligence was the proximate cause of the injury complained of, it will be your duty to render a verdict in favor of the plaintiff and against the said defendants Otis Elevator Company and Bonneville Hotel Company."

The instruction omits the element of knowledge of the elevator company of the careless installation of the cables and imminent danger resulting therefrom at the time they were installed, and such omission is the ground of appellant's exception. The exception taken was both general and special. The general exception is that "the whole instruction as given improperly states the law applicable to the case." The special exception refers specifically to the failure of the court to instruct "that, before the Otis Elevator Company can be held liable, the work must not only be negligent, but done with knowledge, either actual or presumptive, that the work as done would render the elevator imminently dangerous at the time the cables were installed."

The court is of opinion the instruction was fatally defective in the matters referred to, and that both the general and special exceptions were well taken. If the rule announced in the Gertrude Berg Case states the law correctly, nothing is clearer than that knowledge, either actual or presumptive, on the part of the independent contractor, of the character of his work and the imminent danger thereof, in cases of this nature, is an essential element of his liability to third persons injured thereby. Furthermore, the instruction was likewise defective in not including the element of lack of knowledge, actual, or presumptive, on the part of the hotel Company. This feature is covered by the general exception. We have already quoted the rule announced in the Gertrude Berg Case; it is unnecessary to repeat it here.

IV. Assignments Nos. 15 and 16 relate to instruction No. 10. The court instructed the jury, in effect, that the only negligence alleged in the complaint was defective installation of the cables, and that, if the jury

found that the elevator company was not negligent and therefore not liable, they should also find that the hotel company was not liable by reason of said work. This assignment is without merit.

V. Under assignments Nos. 10 and 11 appellant complains that its requests Nos. 3 and 8 were not covered by the general instructions. The requests were as follows:

(3) "If you believe from the evidence in this case that after the cables were installed they became crystallized or fatigued, and that they broke by reason of such crystallization or fatigue, then your verdict should be in favor of the defendant Otis Elevator Company, no cause of action."

(8) "If you find from the evidence that at the time the cables were installed they were installed in such manner as to safely carry the elevator with passengers for a period of approximately 18 months, and that during such use the cables changed in condition, due to the service, or to any strains, shocks, stresses, or vibrations, to such an extent that the change in condition caused the cables to part, then your verdict should be in favor of the defendant Otis Elevator Company, no cause of action."

It is doubtful, in view of the evidence, if request No. 3, as stated, was a proper request. There was some evidence to the effect that crystallization might be due to defective installation.

Request No. 8 is amply covered by instructions Nos. 13 and 15, as follows:

(13) "In determining whether the manner in which the cables were installed rendered the elevator imminently and inherently dangerous, you should take into consideration all the facts and circumstances in evidence including the time the cables were in service, the conditions under which the car was operated, the number of hours per day it was used, and the strains, stresses and shocks, if any, placed upon the cables during the time they were in use."

(15) "You are instructed that, if you find from the evidence that at the time and immediately after the cables were installed there was nothing in the manner in which the work was done to render the elevator liable to fall at any moment, and that the cables became in a con-

dition after their installation which rendered the elevator unsafe, and that such condition resulted from an abnormal use and operation of the elevator, your verdict should be in favor of the defendant Otis Elevator Company, no cause of action."

VI. Assignments Nos. 7, 20, and 21 charge error in denying appellant's motion for a directed verdict; also in denying its motion for a new trial, and that the verdict and judgment are against law and not supported by the evidence. The court did not err in denying appellant's motion for a directed verdict.

For the errors of law to which we have referred, the motion for a new trial should have been granted.

## Errors Peculiar to the Snow Case.

I. Instruction No. 8 is the same as instruction No. 9 in the Sutton Case. We did not quote the instruction in that case, because the assignment also involved the validity of instruction No. 12, which we considered at length. The errors assigned as to both instructions are substantially similar. As there is, however, a substantial difference in one respect between the two instructions, we here quote the instruction:

"You are instructed that it was the duty of the defendants in installing and attaching the cones to the cables in question to use such reasonable care and skill as would be exercised by reasonably careful workmen, skilled in their business, having knowledge of the character of the appliances and the use and purpose for which they were intended.

"And if you believe from the evidence that the said cables were not attached to the cones in question with that degree of care and skill as should have been exercised by careful and prudent workmen skilled in that business, and that as a result thereof the use of said elevator was rendered imminently dangerous to the guests and passengers using the same, then in that regard the defendants would be negligent."

The objection goes to the last paragraph of the instruction, in that it omits the element of knowledge on the part

of the elevator company of the character of its work and the imminence of danger. All that we have said upon that question in our discussion as to the validity of instruction No. 12 in the Sutton Case would apply with equal force to the question presented here, if the instruction purported to fix the basis of appellant's liability. It does not purport to do so. It simply says, in effect, that under the conditions mentioned the elevator company would be negligent. Negligence alone does not establish liability. Gertrude Berg Case, supra. This assignment is without merit.

II. Appellant also assigns as error the last paragraph of instruction No. 15. The instruction reads:

"If you find from the evidence that the safety devices on said elevator were not in an efficient or proper state or condition of repair, and that at the time of the said accident they did not operate or function, due to their inefficiency or condition or repair, and, that, had such safety devices been efficient or operated, or functioned, the said accident would have been prevented, and that the failure of the said safety devices to operate or function was the proximate cause of the accident and injury, then you are instructed that the plaintiff cannot recover in this action, and you will return a verdict against the plaintiff, no cause of action.

"In this connection, however, you are instructed that, even if you find that the safety device on the elevator was defective, and because of such defect failed to function, such fact does not relieve defendants from liability for negligence (if any there were) in failing to properly fasten the cable in the cones (if you find the cables were not properly fastened), if you further find that defendant Otis Elevator Company in performing work for the defendant Bonneville Hotel Company negligently caused or contributed to such defective condition of the safety device."

The principal objection is that the instruction omits the element of knowledge on the part of the elevator company and the lack of knowledge on the part of the hotel company. These elements are both essential to the establishment of liability against the elevator company. Gertrude Berg Case, supra. As to the element of knowledge of the elevator company, the court properly instructed the jury in instruction

No. 10, omitting, however, the element of lack of knowledge or opportunity for knowledge on the part of the hotel company. For such omission, the exception to the instruction was well taken. Sutton Case, supra.

III. It is also contended in the Snow Case, and assigned as error, that the court erred in denying appellant's motion for a new directed verdict, its motion for a new trial, and that the verdict and judgment are against law. The motion for a directed verdict upon the motion as made was properly denied.

For the errors of law hereinbefore referred to the motion for a new trial should have been granted.

### Errors Peculiar to the Berg Case.

I. Appellant's first exception is to instruction No. 9. This instruction is in the same language as instruction No. 9 in the Sutton Case, which we have held to be harmless.

II. The next exception is to instruction No. 14, which reads as follows:

"If you believe from the evidence that the cables were attached to the cones in question in such manner as to render the elevator imminently dangerous to guests and passengers using the same, and that said cables broke in or pulled loose from the cones as the proximate result of the negligent manner in which the same had been attached by the defendants, still the plaintiff would be entitled to recover, even though, after the installation of the cables, they became crystallized or fatigued."

The principal objection urged by appellant to this instruction is that it omits the essential element of knowledge, actual or constructive, on the part of the elevator company of the imminent danger created by it in the manner of installing the cables.

The court, in instruction No. 11, specifically defined the conditions under which the elevator company would become

liable. We here quote that portion of the instruction to which we refer:

"The Otis Elevator Company, as an independent contractor, is liable only in the event you find by a preponderance of the evidence that said Clark, as the employee of the Otis Elevator Company, was negligent in one or more of the ways mentioned in the complaint as negligence relative to the installation and fastening of the cables in the cones, and that said elevator No. 2 was rendered by such negligent installation imminently dangerous, and you further find by a predonperance of the evidence that the Otis Elevator Company knew, or under the particular circumstances of the case should have known, that said elevator was, at the time of the completion of the installation of said cables, and as a result of the manner in which said work was done, in a condition of imminent danger, and in a condition in which reasonable inspection would not have revealed the defect and danger, and that such negligent installation of said elevator was the proximate cause of said injury."

The same requisites as to the liability of appellant are repeated in instructions 13 and 17.

It is contended by appellant that an instruction upon which the case is ruled must include every element necessary to establish the defendant's liability, and that the omission of an essential element in such instruction cannot be cured by statements of the law found elsewhere in the charge. Reference is made to Blashfield's Instructions to Juries (1st Ed.) pp. 176, 177, and 170, which, considered alone, supports appellant's contention. That is no doubt the correct rule where the conflict between the instructions is irreconcilable. But the same author, in the second edition of his work, at page 476, says:

"Reversal will not necessarily follow the giving of a defective instruction, if, when taken in connection with the other charges, the law of the case is fairly given, and no one instruction should be condemned as reversible error, if it appears to be entirely clear as a guide to the jury, when read with the others given in the case. * * * If two instructions are given on the same subject, they should be considered together, and where two instructions, construed together, fairly state the law, the case will not be reversed for error existing in one of them."

On page 477 the rule is further elaborated, and on page 479 the author says:

"Mere insufficiency in an instruction, correct as far as it goes, may be cured by other instructions."

Our opinion is that, when instruction No. 14 is read in connection with instructions Nos. 11, 13, and 17, and all construed together, the error complained of is not reversible.

III. Appellant's assignments of error from 10 to 16, inclusive, allege error in striking out and rejecting evidence tending to prove the defective condition of the safety device used by the hotel company in connection with its elevator, and that the defective condition thereof was known to the hotel company long prior to the accident which resulted in plaintiff's injury. The reason assigned by the court for rejecting the evidence was that it did not appear that the failure to install and maintain efficient safety devices in any manner caused or contributed to the parting of the cables from the cones, and that therefore it was not the proximate cause of the injury.

Appellant relies on the following cases and quotes excerpts therefrom in support of its contention that the evidence rejected was relevant and material; *Casey v. Hoover et al.*, 114 Mo. App. 47, 89 S. W. 330; *Goar v. Village of Stephen*, 157 Minn. 228, 196 N. W. 171; *Schubert v. Clark*, 49 Minn. 331, 51 N. W. 1103, 15 L. R. A. 818, 32 Am. St. Rep. 559; *Griffin v. Jackson L. & P. Co.*, 128 Mich. 653, 87 N. W. 888, 55 L. R. A. 318, 92 Am. St. Rep. 496; *West Jersey R. Co. v. Cochran* (C. C. A.) 266 F. 609; *Wilczynski v. Milwaukee E. & L. Co.*, 171 Wis. 508, 177 N. W. 876; *O'Brien v. American Bridge Co.*, 110 Minn. 364, 125 N. W. 1012, 32 L. R. A. (N. S.) 890, 136 Am. St. Rep. 503; *Huset v. J. I. Case T. M. Co.*, 120 F. 865, 57 C. C. A. 237, 61 L. R. A. 303.

The Sutton Case and the Snow Case, which we have already reviewed, were tried before the Gertrude Berg Case was decided by this court. In those cases, as well as in the Gertrude Berg Case, the evidence here rejected was admitted

and no question was raised thereon. After the decision of this court in the Gertrude Berg Case was handed down and carefully considered, which it evidently was, by the trial court, it is not surprising that in this case the evidence should have been rejected as irrelevant and immaterial.

We need go but little further than the decision in the Gertrude Berg Case to warrant the conclusion we have reached. In that case, at page 524 of 64 Utah (231 P. 834), the court announces the general rule pertaining to the relation of an independent contractor and contractee, and on the next page makes an apt quotation from the opinion in *Casey v. Bridge Co.*, 114 Mo. App. 47, 89 S. W. 330, as an illustration of the rule. Appellant here relies on the same authority and quotes the same language. This court, however, rejected that rule, and adopted another well-recognized by authority as applicable to the particular circumstances of the case, and on page 526 quotes from the same case by way of illustration. Now, whether appellant is justified in relying on conditions which pertain solely to a rule rejected by the court, and seek to apply them to a situation entirely different there are probably grounds for serious doubt. A brief analysis of the situation may be illuminating. Under the general rule, as shown by the rule itself, as quoted, and the illustration immediately following, when the contractee accepts the work from the independent contractor it is said, in *Casey v. Bridge Co.*, supra:

"He is presumed to have made a reasonably careful inspection thereof, and to know its defects, and, if he takes it in its defective condition, he accepts the defects and the negligence that caused them as his own, and thereafter stands forth as their author. When he accepts work that is in a dangerous condition, the immediate duty devolves upon him to make it safe, and if he fails to perform this duty, and a third person is injured, it is his negligence that is the proximate cause of the injury."

Such is the effect of the general rule pertaining to the relation of independent contractor and contractee as declared in the Casey Case, supra, and adopted by this court. But

this court, as before stated, while adopting the excerpt quoted as an apt illustration, rejected the rules as not applicable to the situation presented here.

In the light of the numerous authorities we have examined upon this question, we feel justified in saying, once for all, that the cases arising under the general rule are simply cases of ordinary negligence. The danger created by the work is not imminent. If there is danger at all, it is usually remote and more or less improbable. It may well be that in a case of that kind, when the contractee accepts the work, he thereafter assumes responsibility for consequences resulting from its use, and the independent contractor is exempt from liability, even for injury resulting from his own negligence. Such would seem to be a wholesome rule in that class of cases. But let us suppose that the work which the independent contractor undertakes to perform is of such a nature that, unless it is done with reasonable care, condition will be created which is imminently dangerous to the safety of others who may use the instrumentality; suppose, further, that the contractor knows of the danger created by him, or under the circumstances is presumed to know it, and the danger is not known to the contractee and is so hidden and concealed that he cannot discover it upon reasonably careful inspection; suppose, in consequence of such negligence, an accident occurs and injury results—can it be consistently contended that the contractor can escape liability because the contractee, who was ignorant of the danger and could not discover it upon reasonable inspection, failed to do something which might have prevented the injury? Is not this a different situation altogether from that to which the general rule applies? If so, then why contend for immunity which is obtainable only under the general rule?

It may be contended, however, that the supposed condition we are assuming, as matter of law, that the contractor knew, or should have known, of the imminence of the danger, and that the contractee did not know it, and upon reasonable inspection could not discover it, notwithstanding these matters

were in issue in the case. It is true we have assumed the condition mentioned for the purpose of demonstrating that different principles of law must of necessity be applied to different conditions and situations. As said by the court in *O'Brien v. Bridge Co.*, supra, cited by appellant:

"The truth is that one principle of law applies to cases in which the facts show that the duty is confined to parties to a contract, and that another principle of law applies to those cases in which additional facts appear which are in law sufficient to create a duty to third persons who are strangers to the contract, and to show damage as a proximate consequence of the violation of that duty. Different rules are invoked, because different cases involve different facts."

That was a case which involved the relation of independent contractor in an action by a third party for injuries caused by the collapse of a bridge. The language quoted is pertinent as illustrating the point we are endeavoring to make. The trial court in the instant case knew, at the time it rejected the evidence, just what the nature of the case was. It knew that it was not a case within the general rule, but within the exception thereto as announced by the court in the Gertrude Berg Case. It knew that under the rule announced in that case the immunity to which the defendant might be entitled under the general rule would not apply, and that therefore the defense sought to be established by the offered evidence was no defense at all, and for that reason the evidence was immaterial. The trial court evidently knew, as shown by the instruction given to the jury, that different instructions should be given from those given in the previous cases, in order to conform to the rule announced by this court. It knew that, in order to establish the defendant's liability, it should be made to appear that the defendant knew, or should have known, the imminence of the danger created by it, and that the hotel company did not know of such danger, and could not have discovered it upon a reasonably careful inspection. It instructed the jury to that effect, and fairly submitted such issues for their determination. If this had been a case in which it could not be determined in

advance to which class the case belonged, whether under the general rule or under the exception, the rejection of the offered evidence might have been of serious consequence; but the facts admitted classified the case and brought it within the exception.

In our opinion, the Casey Case, 114 Mo. App. 47, 89 S. W. 330, the first case cited by appellant, and from which we quoted the reasons for the general rule, is more favorable to appellant's contention than any other case which appellant has called to our attention. For that reason we quoted that portion upon which appellant expressly relies. We have not deemed it necessary to specially review the remaining cases, confidently believing they lend no support to the contention that the evidence rejected by the court was material, or that the defense sought to be established thereby was available to appellant in a case of this nature.

Before concluding as to this assignment, it is pertinent to suggest that, whatever duty the hotel company may have owed to keep the elevator and its equipment safe for carrying persons as passengers, it owed it to such persons and to them only. It owed no duty to appellant to provide independent safeguards to protect it against the consequences of it own negligence. It was incumbent as a duty, however, upon the hotel company, when it accepted the work and put the elevator in service, to make reasonable inspection of the cones and cables from time to time, to ascertain whether or not they were in a safe condition for use. The court clearly distinguished this duty from that sought to be imposed by the rejected evidence and gave to the jury the following instruction:

"If you believe from the evidence in this case that William R. Clark, as an employee of the Otis Elevator Company, was negligent in installing the cables on No. 2 elevator at the Newhouse Hotel during September, 1920, and that the Bonneville Hotel Company several months thereafter was negligent in failing to inspect said cables at or immediately above said cone attachments, and that such inspection would have revealed the breaking of the wires of said cables, then the negligence of the Bonneville Hotel Company in this respect became an effi-

cient cause of the injury, and broke the casual connection between the negligence of said William R. Clark as such employee and the injury, and your verdict should be in favor of the defendants."

The court is of opinion there was no error in rejecting the evidence offered, as irrelevant and immaterial.

IV. The last assignment relied on charges error in denying appellant's motion for a directed verdict, its motion for a new trial, and that the verdict and judgment are against law. These assignments are without merit.

### Errors Peculiar to the Waters Case.

I. In this case appellant assigns 19 errors, 13 of which relate to safety devices and bumpers connected with the elevator. As to these our conclusions in the Berg Case, supra, are controlling.

II. Assignment No. 13 charges error in instruction No. 9. That instruction is the same as instruction No. 9 in the Sutton Case, supra, which we have held to be nonprejudicial.

III. Assignments Nos. 8 and 16 are the only ones that appear to have any merit. These will be considered in the order above stated.

Assignment No. 8 charges error in refusing to allow appellant more than one peremptory challenge to the jurors and in denying its challenge to the juror Jensen. It appears that, after the last juror called into the box was examined on behalf of both plaintiff and defendants, the appellant having theretofore exercised but one peremptory challenge, the court said: "Have you any examination?" The attorney for the hotel company answered: "I don't think so. We will accept the jury." The attorney for the appellant said: "We will excuse Mr.———." The attorney for the hotel company said: "We have accepted the jury." The attorney for appellant then asked the attorney for the hotel company to join in the challenge, but he refused, saying

that he was satisfied with the jury as it then stood; that he was willing to allow appellant two challenges out of the three, but, if appellant exercised another challenge, he, on behalf of the hotel company, would insist upon the right to exercise another challenge; that he was satisfied with the jury as it then stood. The court then said it understood that both the defendants must join. There was considerable argument back and forth between counsel, the result of which was that they did not join in the challenge. Thereupon appellant's counsel interposed a challenge to the juror Jensen. The attorney for the hotel company refused to join in the challenge, except upon the condition above mentioned. The court denied the challenge. The question was argued further on the next day, at which time the attorney for appellant stated the grounds upon which he urged his right to exercise the challenge. In the last analysis the grounds appeared to be that the hotel company was cooperating with the plaintiff against the appellant, and was in fact an adverse party thereto, and in such case appellant was entitled to three challenges, notwithstanding the refusal of the hotel company to join.

The question presented is interesting, and in some of its aspects is of first impression in this jurisdiction. The hotel company and appellant were joined as defendants in the cause. They filed separate answers to the complaint and were represented by different counsel. Whether or not their positions were conflicting and adverse, so as to entitle appellant to the full number of challenges allowed a party in a civil case, even if the law permits it in such cases, can be determined only after an examination of the record and the law applicable to the case. The sections of Comp. Laws of Utah allowing peremptory challenges are as follows:

"Sec. 6792. Either party may challenge the jurors, but where there are several parties on either side, they must join in a challenge before it can be made."

"Sec. 6798. The challenges to individual jurors are either peremptory or for cause. Each party is entitled to three peremptory challenges.

"If no peremptory challenges are taken until the panel is full, they must be taken by the parties alternately, commencing with the plaintiff."

Appellant's contention is that the mere fact that appellant and the hotel company were joined as defendants in the action is not conclusive that they were on the same side within the meaning of the above statutes. It is contended that, if their interests in the case were in fact adverse, then they were *not on the same side*. It is further contended by appellant that, not only were the interests of appellant and the hotel company adverse, but that the hotel company actively aided the plaintiff in the prosecution of the action.

As already stated, the hotel company and the appellant, as defendants in the case, filed separate answers and were represented by separate counsel. The pleadings in the case do not show that either defendant was claiming against the other by way of a cross-complaint filed in the case. There are, however, material variations between the answers of the two defendants. Paragraph 4 of the complaint purports to allege in minute detail the proper manner of attaching the cables to the cones, and alleges that unless they are so attached there is great and grave and imminent danger, in the ordinary use of the elevator, of the cables pulling loose, causing the elevator to fall, to the injury of the guests or persons riding thereon, which the defendants well knew. This is admitted by the hotel company in its answer, but denied by appellant. Paragraph 5 of the complaint, among other things, alleges that, in consideration of certain payments made to the appellant by the hotel company, appellant undertook to keep, maintain, and repair the said elevators in said hotel. Appellant in its answer denies this allegation, while the hotel company in its answer admits it, and alleges further that the elevator company undertook to keep the elevators properly equipped for operation. In its answer to the complaint the hotel company admits it was the duty of appellant under its employment to properly attach the cables to the cones, and admits the great and imminent danger unless the

work was properly done; but it affirmatively alleges that it intrusted the work of installing the cables to the elevator company and sets out its relation as an independent contractor, and that the work and the manner of installing the cables was of a technical character, concerning which the hotel company had no information, because the work involved peculiar and technical skill and judgment. And the facts so alleged being only known to the experts, and the elevator company having denied the negligence complained of in paragraph six of the complaint, the hotel company not having sufficient information to form a belief, except as it acquired it from its independent contractor, the elevator company, it placed its denial upon that ground, and also denied the allegations contained in paragraph 6 of the complaint. Finally, the hotel company denied that it was in any respect careless in the premises, or that the accident was in any manner caused by its negligence.

While a cross-complaint was not filed in the case by the hotel company against the elevator company, yet, as matter of law, sufficient was alleged to show that, if judgment was obtained in the action by plaintiff against the hotel company, because of the negligence of the elevator company in installing the cables, the hotel company might have a substantial cause of action against the elevator company for breach of its contract to skillfully perform the work. The attitude of the parties defendant toward each other in relation to the subject-matter of the action is further made to appear from the examination of the jurors on their voir dire, shortly before the attorney for the elevator company interposed his peremptory challenge which was denied. The attorney for the hotel company propounded the following question to one of the jurors:

"Q. Now, Mr. Eccles, taking the suppositious case Mr. Farnsworth presented, assume that you are satisfied from the evidence that the Bonneville Hotel Company is liable, not because of anything it did itself, but because it hired the Otis Elevator Company, and the Otis Elevator Company did something which the Bonneville Hotel Company

could not help, but, for which the Bonneville Hotel Company, because it hired the Otis Elevator Company, is responsible; assume that the Bonneville Hotel Company does not shirk its liability, but simply asks that its codefendant, the Otis Elevator Company, which did the work, share its responsibility and be equally liable—would the fact that the Bonneville Hotel Company says, 'I want my codefendant to be equally liable,' would that prejudice you in any sense against the Bonneville Hotel Company, or against either defendant, in trying the case?"

The same attorney also propounded the following question to the same juror:

"Q. Assume in this case that you are satisfied from the evidence that this elevator fell because of the manner in which the cage or car, in which the passengers were, was attached to the cable, which holds the car in suspension and lets it move up and down; assume that that attachment was within a great big beam, we will call it a cross-bar, placed in a socket where it would not be seen or inspected, where the Bonneville Hotel Company, after the Otis Elevator Company had once done the work, could not find it out; assume that the court charges you that the Bonneville Hotel Company is not bound to inspect, and is not responsible for a defect which it can't inspect—would you hesitate to follow that instruction?"

Following this question, the attorney for the elevator company took the juror in hand and submitted the following question:

"Q. Now, Mr. Eccles, suppose the court should take the view of the law that the plaintiff, having alleged but this one cause of negligence, that he would submit the case to you on that alone, and, as I have stated, it should appear from the evidence that the Otis Elevator Company did install the cables, and, if there was a negligence in their installation, it would be because of a want of proper care on the part of this company. Let us assume that now that is the law that, even should you find a verdict in favor of the plaintiff and against the Bonneville Hotel Company alone in this case, that the way is wide open for the Bonneville Hotel Company, if you faithfully follow the instructions of the court, to sue to recover and get back every penny it had been compelled to pay out to its guests from the Otis Elevator Company in an independent action, would you believe that the Bonneville Hotel Company was perfectly able—in the event that it had any ground for complaint against the Otis—to enforce its complaint in an independent action against the Otis Company?"

At this point respondent's attorney interposed an objection, saying:

"I object to this as not an examination at all as to the qualifications of a juror, but a sort of a fight between my two defendants here, in which we are not concerned.   *   *   *"

We have occupied considerable space in quoting these questions and the objection of respondent's attorney, for the sole purpose of showing the hostile attitude and adverse interest of the defendants, and to show that respondent's attorney appreciated the fact that the defendants were engaged in what he characterized as a "fight." In addition to these matters of difference between counsel for the respective parties, the appellant, prior to the challenge being denied by the court, submitted in evidence a copy of a verified complaint in an action then pending in the United States District Court for the District of Utah, wherein the hotel company was plaintiff and the elevator company defendant. The complaint was admitted for the purpose of the motion only. The complaint showed that the plaintiff hotel company was suing the elevator company, appellant here, for the sum of $300,000 for damages resulting from the accident upon which plaintiff bases her cause of action in the instant case. The character of damages claimed is previous judgments rendered against the hotel company because of the accident, costs accruing, loss of patronage, and attorney's fees, which the hotel company had been compelled to pay and is obligated to pay, including attorney's fees in the case at bar.

Such was the character of the evidence before the court at the time it denied appellant's peremptory challenge. If we consider what occurred afterwards during the progress of the trial, the adverse interests of appellant and the hotel company relating to the subject-matter of the action and their hostile attitude towards each other are all the more manifest and pronounced. The attorney for the hotel company must have fully appreciated the adverse relation, for

he frequently referred to the attorney for the elevator company as "my friend on the other side." There was a motion for a new trial upon this and other grounds, which was denied.

Counsel for appellant call our attention to the following cases: *Hogsett v. North Texas Traction Co. et al.*, 55 Tex. Civ. App. 72, 118 S. W. 807; *First National Bank v. San Antonio R. Co. et al.*, 97 Tex. 201, 77 S. W. 410; *Hundhausen v. Atkins*, 36 Wis. 518.

In the Hogsett Case, supra, the plaintiff brought an action against the traction company and one Chapman because of an alleged false accusation of theft from the person of Chapman, who was a conductor of the traction company. It was alleged in the complaint that the acts of the conductor were done during the discharge of his duties and had been ratified by the traction company. The traction company replied by a general denial and a plea over against Chapman, on the ground, in substance, that such act, if tortious, was of such character as rendered him liable over to the company for such sum as might be rendered against it. Chapman entered a general denial and special plea of truth of the charge for which plaintiff sued. Judgment was entered for the defendants. On appeal the plaintiff charged as error the allowance by the court of six challenges to each of the defendants. Six challenges under the Texas statute were all that were allowed to the parties on either side. The court after citing the case in 77 S. W., supra, and relying thereon, said:

"Here, as in the case referred to, there was a controversy between the defendants notwithstanding their common ground of defense against the plaintiff. They therefore were entitled to six peremptory challenges each."

In 97 Tex. 20, 77 S. W. 410, referred to by the court in the excerpt quoted, the same situation existed. There was a controversy between the defendants concerning matters relating to the subject-matter of the action although they had a common defense against the plaintiff. The court sustained

the ruling of the trial court allowing each defendant six peremptory challenges.

In the Wisconsin case, supra, cited by appellant, the defendants appeared by different attorneys and severed in their defenses. Both of them denied plaintiff's right to recover, but each set up a separate defense for himself tending, if the plaintiff should recover, to shift the liability from himself and to fasten it on his codefendant. At the trial each of the defendants insisted on his separate right to three peremptory challenges, the full number allowed to a party. This was denied by the trial court. On appeal some contention was made, based upon the statute allowing peremptory challenges in criminal cases. The court disposed of the contention in the following language:

"But we think this too narrow a construction. Undoubtedly, when several defendants in a civil action join in their defense, or, severing in their answers, set out but one defense, common to them all, they constitute one party, limited to the statutory number of challenges given to a party, as ruled in this cause in the court below. In such a case they might, and perhaps ought to, join in one answer, setting up the common defense, and they should not be permitted to gain additional challenges by the mere act of severing in their pleadings. They have a community of interests, and should be left to a community of challenges. But when their defenses are essentially different, especially when these are hostile, defendants must necessarily sever in their answers, and, as each has a distinct issue to maintain, we think that each is to be considered a party, within the meaning of section 27, c. 118 [Rev. St. 1858]."

Respondent in this case, in opposition to appellant's contention, cites *Witliff v. Spreen,* 51 Tex. Civ. App. 544, 112 S. W. 98, and *People v. O'Loughlin,* 3 Utah, 133, 1 P. 653. The O'Loughlin Case was a criminal case, in which the defendant, with numerous other persons, was charged with riot. The defendants pleaded not guilty. None of them requiring a separate trial, they were jointly tried, and all found guilty. If there was a controversy as between the defendants, or any of them, it does not appear in the opinion. That case sheds no light upon the question presented here.

The Texas case relied on by respondent was one in which plaintiff sued the defendants to recover real and personal property. Plaintiff recovered judgment, and defendants appealed. Defendants assigned as error the refusal of the court to allow each of them six peremptory challenges, that being the full number allowed to a party. The appellate court disposed of the question as follows:

"There was no fact issued between the two defendants, and the fact that one of the defendants raised fact issues as between himself and the plaintiff, which were not raised by the other defendant, did not entitle each of them to six peremptory challenges in selecting the jury."

The distinction between that case and the cases cited by appellant is tersely stated in the excerpts we have quoted. While the Texas cases are all brief and to the point, yet there is enough said in each of them to show the distinction upon which the decisions rest. The same as in the Wisconsin case, if there is a substantial controversy between the defendants as between themselves concerning the subject-matter of the action, although they have a common defense against the plaintiff, each is allowed the full number of challenges.

In *Levyn v. Koppin*, 183 Mich. 232, 149 N. W. 993, two persons were made defendants in an action for damages resulting from an automobile accident. Each of the defendants was allowed four peremptory challenges, the full number allowed a party under the Michigan statute. The statute reads: "In all civil cases each party may challenge peremptorily four jurors." Comp. Laws 1897, § 10238. The challenges were objected to by the plaintiff, and on appeal the allowance of the challenges was assigned as error. In passing upon the question the Supreme Court said:

"There is no error in allowing four peremptory challenges for each of the parties defendant, which the statute clearly gives as a matter of right. There cannot be any question that the interests of these defendants were several and they must be considered separately as par-

ties to the suit. Each of them is entitled to the full number of challenges given by the statute, as any other construction would do away with its clear intent. 17 Am. & Eng. Enc. Law (2d Ed.) p. 1182; *Stroh v. Hinchman*, 37 Mich. 490; *People v. Welmer*, 110 Mich. 248, 68 N. W. 141; *People v. Caruso*, 170 Mich. 137, 135 N. W. 968, Ann. Cas. 1914, 857."

The Michigan statute is typical of most of the statutes in the other jurisdictions referred to. *In Stroh v. Hinchman*, 37 Mich. 490, Judge Cooley, who wrote the decision, at page 496, said:

"In our opinion, the statute cannot have a reasonable construction, or one which will effectuate its intent, unless the right of separate challenge is allowed to each defendant who pleads separately by different counsel. Any other construction leads, not only to injustice, but under some circumstances to absurdities."

The language quoted, taken as it reads, without reading the entire opinion, goes further than we are willing to go. Nothwithstanding two or more parties on either side may plead separately and be represented by different counsel, we are of opinion they are not each entitled to the statutory number of challenges, unless there is a substantial controversy between them respecting the subject-matter of the suit. A very interesting discussion of this question is found in *Lane v. Fenn*, 65 Misc. Rep. 336, 120 N. Y. S. 237, at pages 243-245. There is also an illuminating note to *Colfax National Bank v. Davis et al.* in 16 Ann. Cas. 265, which I cite without comment. See, also, 35 C. J. title "Juries," X 468, which reads:

"In civil actions, where there are several plaintiffs or several defendants, the general rule is that all on one side constitute but one party and are entitled only to the number of peremptory challenges allowed a single plaintiff or defendant; and statutes giving to 'each party' a certain number of peremptory challenges are uniformly so construed. A party and an intervener whose interests are not adverse constitute a single party within the application of the rule. The rule, however, is to be applied according to the reason upon which it is based and limited to cases in which the position of the several parties upon the same side are similar, so while the fact that several defendants who

set up a common defense plead separately does not entitle them to any additional peremptory challenges, the rule is otherwise where they set up separate and distinct defenses presenting different issues, or where the parties on one side, although having a common cause against the other, have conflicting rights among themselves which the verdict of the jury will affect. But if owners of claims split them up in such a manner as to create controversies between themselves and the holders of portions thereof, all of such holders should together be allowed only one set of challenges. The statutes sometimes expressly provide that if there are several parties on either side of a controversy they must all join in their challenges, and in such case the rule allowing parties appearing separately to interpose separate challenges cannot obtain."

My associate, Mr. Justice CHERRY, in line with the rule announced in the last sentence quoted from Corpus Juris, supra, in a separate opinion, takes the position that, in view of the language of the Utah statute hereinbefore quoted, appellant's peremptory challenge in the instant case was properly denied. If the court is of opinion that the cases cited by Mr. Justice CHERRY from other jurisdictions having statutes similar to our own are in reason and sound logic aplicable to cases of this nature, then of course our duty is plain. If the statute is so clear and conclusive in favor of respondent's contention that there is no room for construction by referring to the evident purpose of the law, then we have no right to resort to reason or purpose in endeavoring to ascertain the meaning of the statute. My associate, in his separate opinion, cites the following cases: *Colfax National Bank v. Davis Imp. Co.*, 50 Wash. 92, 96 P. 823, 16 Ann. Cas. 264; *Crandall v. Puget Sound, etc., Co.*, 77 Wash. 37, 137 P. 319; *Newell v. Loeb*, 77 Wash. 182, 137 P. 811; *S. L. County v. Simas*, 1 Cal. App. 175, 81 P. 972; *Waters-Pierce Oil Co. v. Burrows*, 77 Ark. 74, 96 S. W. 336; *Cumberland T. & T. Co. v. Ware's Adm'x*, 115 Ky. 581, 74 S. W. 289.

It is conceded that the above cases suport the contention that all parties made defendants in a case must join in a peremptory challenge before it will be allowed, and the same is true of the plaintiff. In other words, that is the interpretation given to the statutes, no matter what controversy

exists between the parties on the same side. The opinions upon this question in the cases cited are exceedingly brief. They are entirely devoid of philosophical discussion. The real purpose for which such challenges are allowed and the right conferred is not considered in any of the opinions. It is stated, in effect, in some of them, that it is merely a right conferred by statute, and must be accepted with the limitations fixed by the statute. I have the highest respect, always, for the opinions of the courts of a sister state, and it may be considered presumptious in me to take issue with them upon a question of statutory interpretation.

However, as this question is raised for the first time in this jurisdiction, it becomes our duty to pass upon it, and unless we are bound by some rule of law or practice which compels us to adopt an interpretation which we believe may in many cases lead to an injustice not contemplated by the Legislature, it is not only our right, but our plain duty, to find, if possible, some other interpretation more consonant with justice and the evident intention of the Legislature. The statute does not say that all the parties sued as defendants must join, but all "the parties on either side." Either side of what? Does it mean either side as appears in the title of the case or does it mean either side of a substantial controversy which exists in the very nature of the case? If it means the parties on either side as the same appear in the title of the case, then in many cases it puts it in the power of the plaintiff to deprive the real party sought to be charged of the right to interpose even one peremptory challenge, much less three, which is the number allowed by the statute. The interpretation given to the statute in the cases cited by my associate would deny the right even in a case where one defendant filed a cross-complaint against another. In such case the plaintiff would have his three challenges and the defendants none, unless they could agree. The controversy between the defendants in such case might be more sharp than the controversy between plaintiff and defendants, still they must be considered as on the same side,

simply because they have been so arranged by the plaintiff in the title of the case. Our statute provides:

"If the consent of any one who should have been joined as plaintiff cannot be obtained, he may be made a defendant." (Comp. Laws 1917, § 6510.)

Under the cases referred to, as I understand them, such a party, though his interest in the controversy is all on the side of the plaintiff, would nevertheless be required to join with the defendant sought to be charged before such defendant would be permitted to interpose a challenge. I would not consciously misinterpret the meaning of any of the decisions cited by my associate, but it does seem to me that, instead of a liberal interpretation, with a view of reflecting the real purpose and intention of the Legislature, which evidently intended to confer a substantial right, they have attempted to adopt a strict construction, without due consideration of the consequences that might result in many cases. In all fairness, however, it may be said it is extremely doubtful if such an interpretation of the statute would have been made, as has been made by the courts referred to, if the first case coming before them had been similar in character to the case at bar. If I have read the cases aright, none of them disclose such cogent reasons for a more liberal rule as does the instant case. There are no doubt many cases where defendants are joined, in which one seeks to blame the other for the wrong or injury of which the plaintiff complains. In such cases there is no substantial reason why the defendants, for purposes of a peremptory challenge, should not be considered as being on the same side. But where the record indisputably shows that one defendant practically admits its own liability, and, whether it admits it or not, substantial grounds appear for such admission, and where it further appears that such party is seeking to establish liability against the other as a foundation for recoupment of damages for breach of contract against the codefendant, it is an unblushing travesty to hold that both par-

ties are on the same side of the controversy in the sense intended by the statute in question.

I contend that this exact situation is disclosed by the pleadings, especially when coupled with the evidence adduced at the time the challenge was interposed. No right-thinking man will contend that the hotel company did not have the right to seek to charge the elevator company with the wrong complained of, if it believed the elevator company was responsible for the injury; but that is not the question here. The question is: Were they both on the same side within the meaning of the statute? The only reason apparent to me for the rule adopted in the decisions referred to is the fear that the rule for which I contend may be abused. Such cases as the one at bar are not of frequent occurrence. When, however, such cases do occur, it is not a satisfactory reason to say a substantial right should be denied because it may possibly lead to subsequent abuses. I am irressistibly impressed with the conviction that the rule announced by the courts of Texas, Michigan, and Wisconsin, which I have briefly reviewed in this opinion, is more consonant with reason and justice, and therefore more likely to have been within the intent of our Legislature, than is the rule invoked in behalf of respondent. The statute which requires the "parties on either side to join" should only be regarded as a precaution to the trial court to see that the right of severance in challenges shall not be permitted, except in cases where it is manifest from the very nature of the case that even-handed justice requires it.

I am of opinion the challenge should have been allowed, and that the denial thereof was prejudicial error.

Assignment No. 16 charges error in permitting the following question to plaintiff's witness, and the answer thereto:

"Q. What would you say, from the moment that the attachment was made, as to whether or not it was dangerous from that time on? A. I would consider them dangerous."

The objection was that the witness was not an expert, and that the question called for his opinion, and that it was not a matter of opinion evidence. If this were a controlling question in the case, it would be necessary to enter upon a review of the law relating thereto. As it is not controlling in the instant case, it is sufficient to say that the admissibility of such questions usually depends more or less upon the character of the evidence relating to the same subject already before the court. Questions, especially to nonexpert witnesses, calling for opinions as to ultimate facts, ordinarily should not be permitted. The party in whose behalf the question is asked assumes the risk of reversible error, unless it is clear that the error is harmless. In view of the fact that a new trial must be allowed on other grounds, it is unnecessary to make further comment as to this assignment.

We have now disposed of all the errors assigned in the pending cases that appear to have any merit. It follows, as a conclusion from what has been said, that the judgments in the Sutton Case, the Snow Case, and the Waters Case, for the reasons stated in the opinion, should be reversed, with directions to the trial court to grant a new trial in each case, with leave to the parties, both plaintiffs and defendants, to amend their respective pleadings. In the Berg Case the judgment should be affirmed. The only alleged error in that case relates to the admission in the complaint that the hotel company knew that the installment of the cables was negligently and carelessly done and the danger thereby created was imminent. But, as stated earlier in the opinion, evidence was admitted without objection to the effect that the hotel company did not know, and by reasonable inspection could not have discovered, the negligent installation of the cables, or the imminent danger thereby created. The case was submitted to the jury by proper instructions upon that theory. For that reason we are unable to see how or in what manner appellant was prejudiced.

My associate, Mr. Justice STRAUP, in a separate opinion, expresses the view that the judgment in the Berg Case should also be reversed. He disagrees with the writer upon two points peculiar to that case. He is of opinion that instruction No. 11 in that case, hereinbefore quoted, relating to want of knowledge on the part of the hotel company as to the dangerous condition, if any, incident to the installation of the cables, was not sufficiently stated under the rule announced in the Gertrude Berg Case. The point of the objection seems to be that the court did not instruct the jury that, before it could find the appellant liable, it must find that the hotel company did not know of the danger created by appellant, if any, but merely instructed that it must find that it "was in a condition of imminent danger, and in such a condition in which reasonable inspection would not have revealed the defect and danger."

There would be more force in the objection if there was any evidence in the record tending to show that the hotel company had actual knowledge, as contradistinguished from constructive knowledge. It is not claimed that the hotel company witnessed the installation of the cables and saw how the work was done, nor is it claimed that appellant warned the hotel company of the manner in which the work was done; but, on the contrary, the whole theory of appellant's contention was that the conditions were such that the hotel company upon a reasonably careful inspection could have discovered whatever danger there was, and that was the issue made by the parties and upon which they submitted the case to the jury.

It was not incumbent upon the court to instruct further than upon matters deducible from the evidence under the issues adopted by the litigants themselves. In Blashfield, Instructions to Juries (2d Ed.) vol. 1, § 82, it is said:

"It is elementary that all instructions to the jury should be applicable to and limited to the evidence adduced in the cause; and it is error to give instructions based on a state of facts which there is no evidence tending to prove, or which the undisputed evidence in the case shows

does not exist, even though such instructions contain correct statements of law."

I do not contend that to have instructed as my associate suggests would have been error. On the contrary, I am of opinion it would have been prudent to have given such an instruction. What I do contend is that the instruction, as given, fully covered the issues made by the parties, and was justified by the evidence submitted to the jury. The jury could not have been misled thereby.

The other objection made by my associate relates to the evidence offered concerning the safety devices of the elevator, which was rejected by the trial court. I do not deem it necessary to make further comment upon that feature of the case.

It is therefore ordered, as above stated, that the judgments in the Sutton Case, the Snow Case, and the Waters Case be reversed, and the judgment in the Berg Case be affirmed. The prevailing party in each case to recover costs.

GIDEON, C. J., and FRICK, J., concur.

STRAUP, J.

I concur in the reversal of the judgments in the Sutton, Snow, and Waters Cases. I think the judgment should be reversed, also, in the E. H. Berg Case.

It is conceded that the Otis Elevator Company, in installing the cables and making the repairs on the elevator of the hotel company, was an independent contractor. The court so charged the jury in all of the cases. The Gertrude Berg Case, 64 Utah, 518, 231 P. 832, heretofore considered by this court, and these cases, arose out of the same accident. It is conceded by all parties concerned that the evidence in that case and in these cases as to all of the material facts is the same. In the Gertrude Berg Case this court, by unanimous opinion, in effect held that, to render the Otis Elevator Com-

pany liable for injury to a third person, between whom and the company there was no contractual relation of privity, it was necessary to show, among other things, that the hotel company was without knowledge or means of knowledge of the alleged defect and of its dangerous condition, or that the defect was of such latent character as not to be discoverable by the hotel company by ordinary inspection, and that on the evidence, which in such particular was the same as in these cases, such question was one of fact for the jury. In that case this court proceeded on the theory that, where the proprietor or contractee accepted the work or an instrumentality from an independent contractor in a defective and dangerous condition, with knowledge thereof or discoverable by reasonable inspection, the duty devolved on the proprietor or contractee to make the instrumentality reasonably safe, and if he fails to perform such duty, and a third person is injured, it is the negligence of the proprietor or contractee that is the proximate cause of the injury, and that the contractor, upon the acceptance of the work or instrumentality by the proprietor or contractee, becomes liable to a third person only when the dangerous condition of the work or instrumentality created by him is imminently dangerous, and the contractee or proprietor "had no knowledge of the dangerous condition or defect, which was so concealed that reasonable inspection by the contractee would not have discovered it." In the statement of the case this court, among other things, said:

"Without reviewing the evidence in detail, it is sufficient to say that respondent's testimony tended to prove that the installation of he cables was defective, and done in such a manner as to make the elevator imminently dangerous to the hotel guests, who the appellant knew would use it; that appellant knew of the defective and dangerous condition of the cables; that the hotel company had no knowledge of the defective condition; that the defective work done by appellant was so concealed that it could not have been discovered by reasonable inspection; and that the cables parted and the elevator fell as the result of the defective and improper installation of the cables. These ultimate facts brought the case within the rule of liability and required a submittal of the issues to the jury."

In considering the law applicable to the case, this court stated the general rule thus:

"An independent contractor is not liable for injuries to third persons, with whom he has no contractual relations, occurring after he has completed his work and turned it over to the owner or person with whom he has contracted, and the same has been accepted by the owner or person with whom the contractor made his contract, even though the injury to the third person resulted from negligence of the independent contractor in carrying out his contract."

The court stated that such proposition was supported by nearly 100 cases cited by the appellant and was approved by the textwriters. But the court observed that there were exceptions to such general rule and in such particular then stated:

"The decided weight of authority supports the proposition that, when an independent contractor has done work on an instrumentality and by his work makes the instrumentality imminently dangerous to those he knew would use it, he remains liable, even after the completion of his work and its acceptance by the contractee, to third parties injured as the result of his negligence if the contractor knew or in view of the peculiar circumstances of the case should have known the dangerous condition by him created, and the contractee had no knowledge of the dangerous condition or defect which was so concealed that reasonable inspection by the contractee would not have discovered it."

In another portion of the opinion the court again said:

"The sensible and logical position seems to us to be that if the contractor does defective work which renders the instrumentality dangerous, he becomes liable in damages to one injured if he knew, or under the particular circumstances should have known, that the instrumentality was delivered to the contractee in a condition of imminent danger, and in a condition in which reasonable inspection would not have revealed the defect and danger."

The same thought was again declared in denying the petition for a rehearing. I thus think it clear that this court, in the Gertrude Berg Case, announced the rule that to render an independent contractor liable for an injury to a third person for alleged negligence of the contractor, occurring after

the completion of the work or instrumentality and after it was turned over to and accepted by the owner or contractee, it, among other things, is essential to show that the owner or contractee was without knowledge of the alleged defect and dangerous condition or that the defect and danger were so concealed or of such a latent character as not to be discoverable by reasonable or ordinary inspection on the part of the owner or contractee, to which, as I think should be added, where in the use or in the letting of or passing the instrumentality a duty of inspection was owing by him to the injured person, but which was unnecessary to state in the Gertrude Berg Case because it was conceded, and it is the indisputable law, that the hotel company, the owner and contractee, in carrying its guests and passengers on the elevator used, operated and controlled by it, owed them an active duty of inspection. And in their briefs on these appeals counsel for respondents say:

"We agree with the appellant that, if it could be said that the Bonneville Hotel Company knew of the defective attachment of the cones in question, or by reasonable inspection could have discovered it, then under the decision in the Gertrude Berg Case the Otis Elevator Company would have been exempt from liability. But in that particular we differ with counsel upon the facts involved in these cases with respect to such knowledge, or lack of knowledge, by the Bonneville Hotel Company."

The appellant contended in such respect that such knowledge or means of knowledge was conclusively shown, and for such reason, among others, it was entitled to directed verdicts; the respondents, that the question was one of fact for the jury. The principle so announced in the Gertrude Berg Case is recognized, among others, in the cases of *Casey v. Bridge Co.*, 114 Mo. App. 47, 89 S. W. 330; *Huset v. J. I. Case Threshing Mach. Co.*, 120 F. 865, 57 C. C. A. 237, 61 L. R. A. 303; *Schubert v. J. R. Clark Co.*, 49 Minn. 331, 51 N. W. 1103, 15 L. R. A. 818, 32 Am. St. Rep. 559; *M. K. & T. R. Co. v. Merrill*, 65 Kan. 436, 70 P. 358, 59 L. R. A. 711, 93 Am. St. Rep. 287; *Sider v. General Elec. Co.*, 203

App. Div. 443, 197 N. Y. S. 98; and is perhaps best stated in Wharton, Law of Negligence (2d Ed.) §§ 90 and 91, that:

"Thus a person who is guilty of negligence in manufacturing a dangerously inflammable oil is liable for the damage done by it, no matter how numerous may be the agents by whom it is innocently passed. 'Certainly one who knowingly makes and puts on the market for domestic and other use such a death-dealing fluid, cannot claim immunity because he has sent it through many hands.' When, however, a vendee or agent knows the explosive or otherwise perilous character of a compound, and then negligently gives it to a third person, who is thereby injured, the causal connection between the first vendor's act and the injury is broken,"

—and by Beven on Negligence, vol. 1, at page 50, who, in criticizing the case of *Thomas v. Winchester,* 6 N. Y. 397, 57 Am. Dec. 455, and expressing a contrary view says:

"The court held that, so far as the plaintiffs were concerned, it did not lie in the mouth of the defendant to aver the negligence of the intermediate salesmen, and thereby to avoid the consequences of his own neglect, and that the plaintiff could recover. Had any such duty to test the article sold existed on the part of the intermediaries, it could not have been said that the injurious result to the plaintiff's wife would certainly have followed; and if the intermediate chemists had a duty of examination, their failure to discharge the duty would have absolved all antecedent agents, for subsequently to their neglect there would have been the intervention of an independent volition, in which case the neglect of the defendant was not the cause of the injury, since, had it only been his neglect, the spurious article would never have reached the plaintiff's wife; but the subsequent neglects directed the injurious agency, otherwise innocuous, against her."

It is claimed that the cases of *Bryson v. Hines,* (C. C. A.) 268 F. 290, 11 A. L. R. 1438, *Waters-Pierce Oil Co. v. Deselms,* 212 U. S. 159, 29 S. Ct. 270, 53 L. Ed. 453, and *Clement v. Crosby & Co.,* 148 Mich. 293, 111 N. W. 745, 10 L. R. A. (N. S.) 588, 12 Ann. Cas. 265, hold to the contrary, and that *McPherson v. Buick Motor Co.,* 217 N. Y. 382, 111 N. E. 1050, L. R. A. 1916F, 696, Ann. Cas. 1916C, 440, and *Johnson v. Cadillac Motor Car Co.,* (C. C. A.) 261 F. 878, 8 A. L. R. 1023, imply as much.

It is to be noted that in *Bryson v. Hines* the cases there cited do not support the proposition, except the dictum in the Waters-Pierce Oil Co. Case, and that the matter is neither discussed nor reasoned out, but merely asserted.

In *Waters-Pierce Oil Co. v. Deselms* the oil company negligently mixed gasoline with coal oil and sold it to a dealer as coal oil, who, in the course of trade, sold two gallons of the mixture to the plaintiff, a subvendee,, whose wife and children were killed by an explosion from the use of it. In that case it was indisputably shown that the product was sold by the oil company to the dealer and by the dealer to the plaintiff as coal oil and that neither the dealer nor the plaintiff had any knowledge that the product contained gasoline or that it was other than coal oil, and the case was tried and submitted to the jury on the theory that both the dealer and the plaintiff were without knowledge or means of knowledge of the mixture of the product and the explosive character created thereby. Such clearly appears from the opinion. In such respect the court said:

"In view of the tendencies of the proof as to the entire absence of knowledge by Powers & Deselms [the dealer], when purchasing from the oil company, and the ignorance of Deselms [the subvendee] when he bought from the firm, of the character of the fluid, it is certain that in the case before us the act of the oil company, in any view, was the proximate cause of the accident, as no other independent and efficient cause or wrong can be legally said to have occasioned the same."

But the court further observed that:

"Because we confine ourselves to the particular facts of the case before us we must not be understood as holding, in view of the dangerous character of the fluid and the putting of the same upon the market by the oil company, with the expectation that it would be retailed to the public, and the violation of the statutory regulations and prohibition concerning the sale of such article, * * * that * * * a recovery against the oil company might not have been justified, even if the proof had established that Powers & Deselms had been informed by the oil company of the dangerous character of the mixture."

It is thus seen that what the court said in such latter respect was mere dictum.

In *Clement v. Crosby & Co.*, it was held that a manufacturer, who knowingly mixes and puts upon the market without notice a highly dangerous article, a dangerous compound for blacking stoves, which was liable to explode, and who deceitfully and artfully withheld from the public knowledge of its character, was liable to one who purchased the same without warning from a dealer and who was injured in attempting to use it, and that a manufacturer and another who sells the dangerous article, knowing it to be such, without warning to the consumer, may be sued jointly for injury which the consumer receives through an attempt to make use of it. The case went off on a demurrer to the complaint. The declaration stated that the manufacturer placed a dangerous compound on the market, and at the same time deceitfully and willfully concealed from the public its dangerous elements and properties. The court said that the declaration in effect amounted to a charge of fraudulently putting the compound on the market and held the declaration good as against the manufacturer. In the course of its opinion the court observed that in such cases the manufacturer would be liable though the dealer had knowledge of the dangerous nature of the article and sold it without warning. If it be assumed that in such case it was averred that the dealer had knowledge of the dangerous character of the article, and if it be further assumed that the rule under consideration is the same in a case where an independent contractor makes repairs on an instrumentality for the owner or contractee and when completed turns it over to him in a defective and dangerous condition as in a case where the manufacturer sells to a dealer a poison or an explosive compound, then *Clement v. Crosby & Co.*, as well as other cases on the same point, are contrary to the Gertrude Berg Case.

*Johnson v. Cadillac Motor Car Co. and MacPherson v. Buick Motor Car Co.* are automobile cases, where a manufacturer sold a car to a dealer and the dealer to a subvendee or purchaser, who was permitted to recover from the manu-

facturer on account of an injury sustained by him, due to a defective wheel, the spokes of which were made of decayed or fragile timber. The Cadillac Case is somewhat weakened by a former and contrary decision of the same court in the same case (221 F. 801), 137 C. C. A. 279, L. R. A. 1915E, 287, Ann. Cas. 1917E, 581), and seems to be based on a decision of the New York court in the Buick Case, which, notwithstanding the doctrine of the law of the case, was followed by the federal court, instead of its own decision on the prior appeal of the same case between the same parties and upon the same pleadings and evidence. The only difference on the two appeals in the Cadillac Case was a change of judges. However, the Buick Case in some particulars seems to be well considered and well founded and is supported by prior decisions of the New York court.

But, assuming that correct results were finally reached in those cases, still, fundamentally, I perceive a distinction between such cases and the one in hand. In neither of the automobile cases was there anything said, or any reference made, as to the knowledge or means of knowledge, or the want of it, of the dealer or intermediary as to the alleged defect and dangerous condition of the wheel. Thus whether knowledge or means of knowledge of the dealer was regarded as an essential or even a material element is not disclosed, for not anything is said about it in either of the cases. Further, it was made to appear in each of the cases that the car in a finished condition, with the wheels painted and varnished, was delivered by the manufacturer to the dealer. So the alleged defect, "the spokes made of dead and dozy timber," was at least not obvious, nor, in the absence of anything to put the dealer on inquiry, was he in duty bound to make an inspection, to ascertain whether the automobile and its parts were constructed of proper and suitable material and reasonably safe for the use and purpose for which it was intended; and to ascertain whether the spokes, after being painted and varnished and the car delivered in a finished condition, were made of seasoned hickory or other suitable timber, would

have required an inspection or test as to an alleged and latent defect, which the dealer, under the circumstances, was not required to make, nor was there otherwise any active duty imposed upon him to make an inspection or test before passing the car on to a purchaser. He might become liable to the purchaser for a breach of warranty either express or implied, but that is another matter.

But so far as concerns the matter in hand the dealer, under the circumstances so far as disclosed, was a mere innocent or unconscious agent or vehicle through which the automobile in its alleged defective and dangerous condition passed from the manufacturer to the subvendee or purchaser, and thus the alleged negligence of the manufacturer was the proximate cause of the injury as no other independent and efficient cause or wrong intervened, or can legally be said to have caused the injury. If, however, the dealer had been one who himself purchased the automobile from the manufacturer for his own use, and used it as a common carrier of passengers, and in doing so one of his passengers was injured by a collapse of the defective wheel, or other parts of the automobile, I perceive the application of a different rule, for in such case an active duty was owing from him as such carrier to his passengers to make at least a reasonable inspection from time to time as the nature of the business and due care required; and if in such case he had knowledge of the alleged defect and dangerous condition, or the defect and condition were such as to be discoverable by reasonable inspection, and if with such knowledge or means of knowledge he used or continued to use the automobile without repairing the defect or rendering the automobile reasonably safe, and a passenger is injured, then the negligence of such carrier and intermediary becomes the intervening and the proximate cause of the injury. But if the defect and dangerous condition were so concealed or latent as not to be discoverable by reasonable inspection, and were unknown to the intermediary, then the operation of the negligence of the

manufacturer is not broken, but continues, and is regarded as the proximate cause of the injury.

Here the hotel company owed its passengers an active duty of inspection of all parts of the elevator which prudence might suggest were likely to become out of repair or defective, and if in the performance of such duty the alleged defect and dangerous condition were such as to be discoverable by such inspection, or if the hotel company otherwise knew thereof, and with such knowledge or means of knowledge continued to use such elevator in such defective and dangerous condition, without repairing it or rendering it reasonably safe, then such negligence, and not that of the Otis Elevator Company, became the proximate cause of the injury. I am aware there are cases which may be said to hold to the contrary, and that in such case the manufacturer or independent contractor and the intermediary are both liable; but such, as I understand it, is not the holding in the Gertrude Berg Case. Whatever view, as an original proposition, might be entertained as to the want of knowledge or means of knowledge of the hotel company, the intermediary, being an essential element to render the Otis Elevator Company liable, I think the question settled by the Gertrude Berg Case. And inasmuch as the appellant and all the respondents on these appeals have asserted their unqualified reliance on the Gertrude Berg Case, and do not question any principle of law therein announced, I think the rule there stated should be applied and followed on these appeals.

In all the complaints of the respondents, and as pointed out by Mr. Justice THURMAN, it is averred that the hotel company, the contractee and owner of the elevator, had full knowledge of the alleged defect of the elevator and the imminence of the danger created thereby. If the Gertrude Berg Case, as to the requisite of want of knowledge or means of knowledge of the contractee of the alleged defect and danger to render the contractor liable, is to be followed, as I think it should be, such allegations in the several complaints are not only irreconcilable with the statements of the respond-

ents in their briefs, that if the hotel company knew of the defect and danger, or by reasonable inspection could have discovered them, the Otis Elevator Company was not liable, but seemingly prevent recovery by the respondents against the Otis Elevator Company. I see no escape from that as long as such allegations remain as a substantive part of the complaints, except as to such of the cases as were tried and submitted on the theory that knowledge or means of knowledge of the hotel company or the want of it was an issue, and as such tried and submitted to the jury without objection.

Evidence was given by the respondents tending to show that the hotel company was without notice or knowledge, or means of knowledge, of the alleged defect and danger, and by the Otis Elevator Company that whatever alleged defect and danger there were were known to the hotel company or discoverable by it by ordinary or reasonable inspection. But in neither the Sutton nor the Snow Case was the jury charged the principle of law, either in substance or effect, that to render the Otis Elevator Company liable it was necessary for the jury to find among other thnigs, that the hotel company was without knowledge or means of knowledge of the alleged defect and danger; and nowhere in either of such cases was the jury given to understand that to render a verdict against the Otis Elevator Company it was necessary for them to find that the hotel company was without knowledge or means of knowledge of the alleged defect and danger. In the court's charge to the jury in the E. H. Berg Case the question was only hinted at, but as I think was not sufficiently or properly put before the jury, at least not to the extent to convey the thought to the jury that to render a verdict against the Otis Elevator Company it was necessary for them to find that the hotel company was without knowledge or means of knowledge of the alleged defect and danger. In the Walters Case the jury were charged that to render a verdict against the Otis Elevator Company it was necessary to find that the hotel company had no knowledge of, and by reasonable inspection could not have discovered,

the alleged defect prior to the happening of the accident. Thus, as to this case, it may well be said that it was tried and submitted on the theory that knowledge or means of knowledge of the hotel company or the want of it was an issue and as such was submitted to the jury, and that in such case the averment in the complaint that the hotel company had full knowledge of the defect and danger was disregarded or waived and the case tried as though no such averment had been in the complaint.

Because the Sutton, Snow, and E. H. Berg Cases were not so submitted to the jury, and thus not tried as though such question was an essential issue or element, and the averment in the complaint that the hotel company had full knowledge of the alleged defect and danger thus not having been waived or disregarded by a submission of the case to the jury on a theory inconsistent with such averment, I think the judgment in each of them should be reversed, also, for such reason. But the Waters Case, for the reason just stated, should not be reversed on such ground, but on the ground stated in the opinion by Mr. Justice THURMAN, denying the appellant its challenges of jurors, and also for rulings made relating to evidence similar to those in the E. H. Berg Case.

The point or question as to the theory on which a case was tried and submitted is not dependent upon or determinative of questions of failure to charge, burden of proof, or sufficiency or insufficiency of evidence; and observations as to the former question should not be carried to such latter questions, to which they are not applied nor pertinent. The point now in hand is not, did the court err in failing to charge the jury on the subject, but was the averment in the complaint, that the hotel company had full knowledge of the alleged defect and of the imminence of the danger thereby created, disregarded or treated as waived by the submission of the case to the jury on a theory inconsistent with such averment? To ascertain that, the evidence adduced, among other things, is to be looked at, to see the theory on

which the case was presented and the charge to see the theory on which it was submitted to the jury. When the court in the Waters Case submitted to the jury the question of whether the hotel company had or had not knowledge or means of knowledge of the alleged defect and danger, and directed the jury, if they found such question in the affirmative, to render a verdict in favor of the Otis Elevator Company, it is quite apparent that the averment referred to in the complaint was disregarded, and the case submitted on a theory inconsistent therewith, and that, too, regardless of whether requests to charge were or were not made by one or the other, or by neither, of the parties, and regardless of the question of burden of proof, or of the conclusiveness or inconclusiveness of the evidence in such particular.

In the other cases, where no such question was submitted to the jury and no such direction given them, and the jury not required to pass on the question of whether the hotel company had or had not knowledge or means of knowledge, and under the charge permitted to find for the plaintiff and against the Otis Elevator Company, without considering or passing on the question of such knowledge or means of knowledge, it is just as apparent that those cases were not sumitted to the jury on a theory inconsistent with the averment referred to, and that, too, regardless of further questions of burden of proof, or want or requests to charge or the conclusiveness or inconclusiveness of the evidence. In the Waters Case the jury, under the charge, by their verdict of necessity found that the hotel company had neither knowledge nor means of knowledge of the alleged defect or of the danger. In the other cases, the jury, to render a verdict for the plaintiffs against the Otis Elevator Company, not being required to so find, and being permitted to render such a verdict without a finding, or considering or passing on the question, it seems clear that the verdicts rendered in such cases did not pass on or dispose of such question. Thus, with respect to such considerations, observations or suggestions as to burden of proof, whether requests to charge were

made or not, the conclusiveness or inclusiveness of the evidence, are, as I think, not to the point nor to the purpose; nor, as applied to these considerations, is the observation that such cases are ruled because of the court's failure to charge.

As to the evidence, it is not contended by the appellant, except as averred in the complaint, that there is any direct evidence to show actual knowledge of the hotel company, but that the evidence to show means of knowledge is conclusive, while the respondents but contend that such question was one of fact for the jury. And as one ordinarily is bound by the facts as alleged by him, and since the respondents in unqualified language alleged that the hotel company had full knowledge of the alleged defect and danger, and as long as such averments remain as a substantive part of the complaint, or otherwise are not disregarded or treated as waived, as heretofore considered, I do not well see how on the record, it may be said there is not anything to show knowledge or means of knowledge of the hotel company; nor in view that the complaint is against the three defendants, equally and jointly charging all of them with the charged negligence and demanding judgment against all of them, do I see how the language in paragraph VI of the complaint, "And plaintiff alleges that the said defendants then and there well knew the careless and negligent manner in which the said cables were attached to the said cones, and then and there well knew that there was great and grave and imminent danger of the said cables breaking in said cones and separating therefrom," etc., and other similar language in the complaint, may be construed to mean knowledge only of the defendants Otis Elevator Company and Clark, and not of the hotel company.

If, as is contended, the words, "the said defendants," as used in paragraph VI, mean only the defendants Otis Elevator Company and Clark, and not the defendant hotel company, and since such words refer, not only to the allegation of knowledge, but also to the allegations of negligence

and to everything else in such paragraph alleged, then not anything whatever is charged against the hotel company, and naming as a defendant in the cause was but a vain thing, and that, when the plaintiff "prayed judgment against the said defendants," judgment was prayed against the Otis Elevator Company and Clark only, and not against the hotel company. Nowhere do the respondents, in their briefs or otherwise, contend that the words "the said defendants," as used in paragraph VI, or in any other portion of the complaints, mean the two defendants only, and not all of them. And I do not think the complaints open to the contention that such words mean only two, and not all, of the defendants.

I do not concur with Mr. Justice THURMAN that the evidence referred to by him was properly stricken in the E. H. Berg Case. It is to be noted that in this, as well as in all of the other cases on this appeal, the appellant, the Otis Elevator Company, denied the alleged defect and danger and all the charged negligence against it, and denied that if the cables broke, or pulled loose or became detached from the cones, that the elevator "would be made or caused to fall," and injury result, "if the said elevator had been equipped with proper safety appliances." The appellant did not allege that the elevator was not equipped with proper and suitable safety devices, and did not allege that the hotel company was negligent in such respect. However, it contended that, had the elevator been equipped with proper and efficient devices, the fall of the elevator would have been arrested before it struck the basement, and that the injury would have been prevented. It gave evidence to show that safety appliances or devices were used by all reputable elevator concerns for the purpose of stopping the descent of the elevator, no matter what was the cause of its falling or dropping, whether due to overspeeding the elevator or the breaking of the cables, and that with the weight of the cage, the counterweights, the weight of the passengers, and the distance the elevator dropped, had it been equipped with

proper and efficient devices, it would have been arrested and stopped within 12 feet from where it started to drop, and more than 20 feet from the floor of the basement where it struck, and gave evidence to show that the devices with which the elevator was equipped were defective, inefficient, and unsafe. This evidence, on motion of the plaintiff and over the objection of the appellant, was stricken by the court.

The appellant further offered to prove, but which offer upon the plaintiff's objection was denied, that the safety devices were in a defective condition, so that they would not operate or perform the function for which they were designed, and afforded no protection to the elevator or to the persons riding therein, in the event the elevator was overspeeded, or the cables broke, or the elevator through other causes dropped or fell while being operated, and that such defect and unsafe condition of the safety devices were well known to the hotel company; that it failed to remedy such defect or condition; that at the time of the accident the elevator obtained a sufficient speed to cause efficient safety devices in proper condition and repair to operate and stop the car; and that, had the elevator been equipped with proper and efficient safety devices, the elevator on the occasion of the accident could have been brought to a gradual stop without injury to the passengers. Similar rulings were made in the Waters Case.

I think the court erred in striking and rejecting the evidence. True, appellant did not affirmatively plead such negligence on the part of the hotel company; but the evidence was not stricken or rejected because of that. The appellant was, however, entitled to the evidence under the general issue. 29 Cyc. 585; 14 Ency. Pl. & Pr. § 244. Apparently the evidence was stricken and rejected on the ground that the breaking of the cables was due to the negligence of the appellant, and was the sole or a concurring and contributing cause of the injury, and hence the stricken and rejected evidence was regarded as immaterial. In that I think the court assumed too much. Of course, if the appellant was

negligent in the particulars as alleged, and if such negligence was operative and concurring and contributing at the time of the injury, the appellant would be liable, though the injurious result was also concurred in and contributed to by the hotel company, on the principle that, if a person suffers damage as the proximate result of the negligence of two others, and the damage would not have occurred through the negligence of either alone, both are liable to the person injured. But such were questions to be determined and not to be assumed by the court.

The appellant denied the alleged defect and danger and all the negligence charged against it, and gave evidence to support its denial. Whether it was negligent, and whether such negligence was the proximate cause of the injury, were, on the record, questions of fact. It was so held by this court in the Gertrude Berg Case on substantially the same evidence as here. The court could not determine such questions as matter of law. When a defendant is charged with negligence and a resulting injury therefrom, he may, under the general issue, show that the negligence of another, of a third party, and not that of the defendant, was the proximate cause of the injury. When evidence respecting such a subject is adduced, whether such third person was or was not negligent, and whether such negligence was the sole proximate cause, or a concurring and contributing cause, ordinarily are questions of fact. Before the court here was warranted in striking and rejecting the proffered evidence, it was required to hold as matter of law that the appellant was guilty of the charged negligence, and that such negligence was the sole proximate cause of the injury, or a concurring and contributing cause. On the record the court was not justified in so holding. Nor did the court in fact so hold, for it submitted such questions to the jury, as was its duty.

It is argued that the evidence was properly stricken, and the offer properly rejected, because the evidence respecting the defective and insufficient safety devices bore no relation to the breaking of the cables, and in no sense as a con-

tributing cause thereof, and hence the evidence was immaterial. Such argument again involves the proposition that appellant as matter of law was responsible for the breaking of the cables and that its negligence was the sole proximate cause of the injury. The appellant claimed, and gave evidence to supuport it, that the breaking of the cables was not due to any negligence on its part, and the court submitted such question to the jury, as well as whether such negligence was the proximate cause of the injury. Though the stricken and rejected evidence respecting the defective and insufficient safety devices did not relate to the cause of the breaking of the cables, and bore no relation to the charged negligent acts of the appellant, still that did not justify striking and rejecting the evidence.

I do not understand the law to be that evidence respecting the negligence of a third person to be material or relevant must in some manner or degree relate to the acts of the charged negligence of the defendant, whether of omission or commission. It, of course, must bear some relation to the cause of the injury, but not necessarily to the charged negligent acts of the defendant. It may be wholly independent of such acts; indeed, a wholly independent and intervening cause, but for which the injury would not have occurred. Such was the claim of the appellant, and to support which evidence was adduced and proffered by it. It showed and offered to show that it was the duty of the hotel company to equip the elevator with proper and efficient safety devices, so as to arrest or stop the dropping or falling of the elevator, no matter from what cause, whether from overspeeding, or breaking of the cables, or other cause, and that the hotel company neglected to do so, and negligently suffered and permitted the elevator to be run and operated with defective, inefficient, and unsafe devices, which, as appellant claimed, was the direct and proximate cause of the injury, and that, had the elevator been so equipped with proper and efficient devices, it, notwithstanding the breaking of the cables, could have been stopped and the injury avoided.

It also is argued that the hotel company was not required to anticipate negligence on the part of the appellant or take precautionary measures to guard against it. That, as it seems to me, is not the point. The argument again necessarily is based upon the assumption that the appellant was guilty of negligence as matter of law, and that such negligence was the proximate cause of the injury. As already observed, whether the appellant was negligent, and whether such negligence was the proximate cause of the injury, or a concurring and contributing cause, were issues to be tried, and which in fact were submitted to the jury, and when the court struck and rejected the evidence it could not assume that the appellant as matter of law was guilty of negligence, or that such negligence was the sole proximate cause of the injury, or a concurring and contributing cause, and in the midst of the trial deny the appellant the right to further litigate the question.

The evidence adduced and proffered by the appellant in no particular was offered on the theory that the hotel company was required to anticipate negligence on the part of the appellant, or of any one, or that it was required to take precautionary measures against it. The hotel company owed a higher duty and a more vigilant exercise of care with respect to its passengers than did the appellant. It owed a duty to them, and to these respondents as such, to safely carry them, and that to do so, so the appellant offered to prove, it was, among other things, its duty to equip its elevator with proper and efficient safety devices to guard and protect its passengers, and the respondents as such, against accident and injury from a dropping or falling of the elevator, no matter what the cause, whether accidental or otherwise, resulting from its operation by the hotel company, and that such was the purpose and function of safety devices, but that the elevator was not so equipped. It was upon such theory that the appellant adduced and proffered the evidence stricken and rejected. I think it was entitled to develop such theory, and show, if it could, that the claimed defective and

inefficient safety devices were the direct or intervening and proximate cause of the injury, and but for which the injuries complained of would not have resulted, and that with respect to such matters the appellant was entitled to take the judgment of the jury and not that of the court.

I therefore think the judgments in the E. H. Berg and in the Waters Cases also for such complained of rulings should be reversed, and that the causes, as well as all of the other causes should be remanded for new trials.

CHERRY, J. (dissenting in part).

The orders reversing the Sutton, Snow, and Waters Cases do not meet with my approval. The first two are reversed, because of the omission of the trial court, in each case, to submit to the jury the questions of the knowledge by the elevator company and the lack of knowledge by the hotel company of the negligence and danger complained of. It is stated, in effect, that by our decision in *Gertrude Berg v. Otis Elevator Co.*, 64 Utah, 518, 231 P. 832, we are committed to the rule that liability in these cases is dependent upon affirmative proof that the elevator company had knowledge and the hotel company had no knowledge of the defect and danger complained of, and that unless both questions are submitted to the jury, a verdict for the plaintiff cannot stand.

I know of no text or previously adjudged case which announces such a rule, and in my opinion the Gertrude Berg Case is no authority for it. It is true in that case (as in the cases at bar) the fact of knowledge by the one and the lack of knowledge by the other were proved in the case, and this court very properly stated in the decision that in such case the decided weight of authority supports the proposition that the former is liable. But the opinion does not purport to state the minimum conditions of liability in such cases; it merely disposes of the case before the court upon the facts in that case. The decision is authority for the rule of liability under the facts there stated, but it is no obstacle in the way

of liability being upheld in other cases, upon a less showing of facts. Upon the proposition that the questions of knowledge referred to must be submitted to the jury, the Gertrude Berg Case actually decides the very contrary. The instructions in that case, which this court said "constituted a clear and concise statement of the law applicable to the facts," and in which "no reversible error was committed," contained no charge whatever upon the subjects of knowledge or lack of it by the respective defendants.

The question under consideration involves, (1) the knowledge on the part of the elevator company; and, (2) the lack of knowledge on the part of the hotel company.

On the first proposition, if the Gertrude Berg Case is any authority at all, it supports the judgments in the cases at bar. There is no difference in the facts or the records upon this subject. In the Gertrude Berg Case the question was discussed and decided. On page 527 (231 P. 835), after quoting the allegation of the plaintiff's complaint to the effect that the defendant well knew of the negligence and danger, etc., the court said:

"The above allegations were repeated in substance by the court in its statement to the jury of the issues submitted, but, though requested, *no other instruction was given relating to the knowledge of appellant of the imminence of the danger.* It is now contended that it was error not to give further instructions on this subject. No doubt the court would not have refused the requests, had they not contained erroneous legal propositions." (Italics supplied.)

The court then points out the erroneous features of the requests and continues:

"The sensible and logical position seems to us to be that, if the contractor does defective work which renders the instrumentality dangerous, he becomes liable in damages to one injured if he knew, or under the particular circumstances should have known, that the instrumentality was delivered to the contractee in a condition of imminent danger, and in a condition in which reasonable inspection would not have revealed the defect and danger. As we view the law, the requested instructions contained erroneous propositions of law. In this jurisdiction it is well established that error cannot be predicated upon the re-

fusal to give a requested instruction, if the request contains any erroneous statement of either law or fact. With the statement of the issues by the court and other instructions given, which as a whole constituted a clear and concise statement of the law applicable to the facts, we are convinced that no reversible error was committed by the court in the instructions given. * * *"

In that case the liability of defendant is upheld and the judgment affirmed, notwithstanding the failure to instruct upon the element of defendant's knowledge, the requests therefor having been erroneous. Here, where there was no request at all, the omission or failure to charge upon the element of defendant's knowledge is held by the majority to be fatal error. There is no support in the Gertrude Berg Case for such conclusion. The doctrine, as usually stated, is that the independent contractor or manufacturer, as the case may be, who delivers to another an article or instrumentality which has been rendered imminently dangerous by his negligence, is liable to third persons injured thereby, if the original maker had knowledge that the nature of the thing and its intended use was such that it would be imminently dangerous to third persons if defectively made. The requisite knowledge upon the part of the maker "hath this extent, no more."

"If the nature of a thing is such that it is reasonably certain to place life and limb in peril when negligently made, it is then a thing of danger. Its nature gives warning of the consequences to be expected. If to the element of danger there is added knowledge that the thing will be used by persons other than the purchaser, and used without new tests, then irrespective of contract, the manufacturer of this thing of danger is under a duty to make it carefully. * * * There must be knowledge of a danger, not merely possible, but probable. * * * Whether a given thing is dangerous may be sometimes a question for the court and sometimes a question for the jury. There must also be knowledge that, in the usual course of events, the danger will be shared by others than the buyer. Such knowledge may often be inferred from the nature of the transaction. We are now dealing with the liability of the manufacturer of the finished product, who puts it on the market to be used without inspection by his customers. If he is negligent, where danger is to be foreseen, a liability

will follow. * * * Beyond all question, the nature of an automobile gives warning of probable danger if its construction is defective." Cardozo, J., in *MacPherson v. Buick Motor Car Co.*, 217 N. Y. 382, 111 N. E. 1050, L. R. A. 1916F, 696, Ann. Cas. 1916C, 440.

In the cases at bar, the elevator company admitted in its answers that it knew the nature and intended use of the elevator which it repaired. Beyond all question the nature of a passenger elevator in a public hotel gives warning of probable danger if its construction is defective. There was no question of fact respecting the knowledge of the elevator company to be submitted to the jury. From the pleadings that knowledge followed as a matter of law. The elevator company, knowing the nature of the elevator it installed and its intended use, was bound to know the danger necessarily created by its own negligent acts.

Now, with respect to the lack of knowledge on the part of the hotel company:

The majority opinion holds, in effect, that such lack of knowledge must appear affirmatively before the elevator company is liable, and that this is so vital and fundamental a condition that to omit it in the instructions, as a condition of recovery, must invalidate the verdict, although no request is made to instruct the jury upon the subject. And the opinion in the Gertrude Berg Case is relied upon to support the conclusion. In the Gertrude Berg Case the question was not raised or discussed at all, and in the decision in that case, upon a record in this respect almost identical with the cases at bar, the liability of the elevator company was sustained, and the judgment against it affirmed, when no reference whatever was made in the instructions concerning the knowledge of the hotel company. In the cases at bar, as in the Gertrude Berg Case, there was affirmative uncontradicted evidence that the hotel company had no actual knowledge of the defect and danger complained of, and there was very persuasive evidence (disputed in argument) that the cone attachment itself was of such a nature and in such a position that reasonable inspection would not have discovered the de-

fect. But here, for the first time, the elevator company asserts that an averment contained in each of the complaints of the respective complainants, amounts to an unqualified allegation that the hotel company had full knowledge of the defect and danger, and that the plaintiffs are bound by such pleadings. The allegation is paragraph VI of the respective complaints and is quoted in the prevailing opinion. It is to the effect "that the said defendants" then and there well knew of the negligent manner of work, the danger thereby created, etc.

It is not clear to me that the phrase quoted includes the hotel company. There were three defendants sued in the action, the hotel company, the elevator company, and one Clark. In paragraph V of the complaint it is alleged, in substance, that the elevator company undertook to maintain and repair the elevators, and that on a certain date mentioned it installed the hoisting cables on the elevator in question; that the work of installing the cables was performed by defendant Clark, who was then and there an employee of the elevator company. Then follows paragraph VI, alleging, in effect, that it was the duty "of said defendants," in attaching the said cables, to properly bend the wires, etc., and that, unless said cables were properly attached, there was great danger of the cables parting, etc., all of which "the said defendants" well knew; that, notwithstanding the duty of "the said defendants" in the premises, they negligently and carelessly did the work, so that there was great and imminent danger, etc., and that "the said defendants" then and there well knew of said defect and danger, etc.

In view of the allegation of paragraph V that the defendants, the elevator company, and Clark, its employee, undertook to and did do the work of installing the cable, I am not certain that the term "the said defendants," as repeatedly used in the next succeeding paragraph, must be held to include all three defendants. I think it equally permissible to say, especially after verdict, that the words quoted referred only to the two defendants who actually did the work, and

did not include the hotel company. That this was the understanding of the parties at the trials cannot be questioned. The plaintiff, in each case, offered affirmative proof that the hotel company had no actual knowledge of the defect and danger, which evidence was admitted without objection and was wholly uncontradicted. And no allusion to the question of the pleading which is now raised was made at any of the trials. Under these circumstances, I think the doubtful and strained interpretation of the pleadings contended for by the elevator company should be rejected.

In my view, the pleading itself, under the circumstances, does not amount to an allegation that the hotel company had knowledge. But, assuming that it does, it is immaterial, because such knowledge, as hereinafter shown, is no bar to recovery by the plaintiffs.

While considerable importance is attached to the pleading in the majority opinion, it seems to be the conclusion there reached that, independent of the pleading, the cases must be reversed upon the grounds that the lack of knowledge by the hotel company was not submitted to the jury, which is held to be fatal error. Of course, if lack of knowledge by the hotel company is an essential prerequisite to recovery, the complaints all fail to state a cause of action, because that element is not alleged. This inquiry involves two separate legal questions: (1) Is such lack of knowledge a condition precedent to recovery? and, (2) Is it error to omit submitting the matter to the jury, when the fact is proved by uncontradicted evidence, and no request is made for an instruction concerning it? My opinion that both questions should be answered in the negative brings me in disagreement with my associates.

The doctrine of liability in this branch of the law has been frequently and ably expounded in the courts. Notable and comprehensive discussions of the subject are made by Pitney, C., in *Tomlinson v. Armour & Co.*, 75 N. J. Law, 748, 70 A. 314, 19 L. R. A. (N. S.) 923, by Jaggard, J., in *O'Brien v. American Bridge Co.*, 110 Minn. 364, 125 N. W. 1012, 32

L. R. A. (N. S.) 980, 136 Am. St. Rep. 503, and by Cardozo, J., in *MacPherson v. Buick Motor Co.,* supra. In neither of these cases, nor in the great number of cases cited by them, is there any warrant for the rule that liability is conditioned upon proof of the negative fact that the intermediary had no knowledge of the defect or danger. It is enough that the work is finished, the test final, or the thing of such a nature that reasonable inspection would not disclose the danger.

But in cases of actual knowledge of the defect and danger on the part of the intermediary, through which the dangerous thing passes from the negligent maker to the person injured, the decided weight of judicial opinion holds the original author of the danger liable notwithstanding. *Thomas v. Winchester,* 6 N. Y. 397, 57 Am. Dec. 455; *Ives v. Welden,* 114 Iowa, 476, 87 N. W. 408, 54 L. R. A. 854, 89 Am. St. Rep. 397; *Clement v. Crosby,* 148 Mich. 293, 111 N. W. 745, 10 L. R. A. (N. S.) 588, 12 Ann. Cas. 265; *Waters-Pierce Oil Co. v. Deselms,* 212 U. S. 159, 29 S. Ct. 270, 53 L. Ed. 453; *Goar v. Village of Stephen* (Minn.) 196 N. W. 171; *Junkermann v. Realty Co.,* 213 N. Y. 404, 108 N. E. 190, L. R. A. 1915F, 700; *Bryson v. Hines* (C. C. A.) 268 F. 290, 11 A. L. R. 1438; *Hartley v. Rochdale,* 2 K. B. 594, 3 B. R. C. 993.

Even assuming that the doctrine of the cases just cited is wrong, and accepting the strict rule that knowledge of the intermediary breaks the casual connection between the originla negligence and the injury, the existence of such knowledge would only be matter of defense. In the cases at bar there was no evidence whatever that the hotel company had actual knowledge of the defective condition of the cables or of the danger created thereby. The only evidence on the subject was to the contrary. The action was defended by appellant upon the theory that it had committed no negligence, that the cables had been attached to the cones in a careful and proper manner, and that the accident did not result from any of its acts or omissions.

The rule just stated rests upon the idea that if the intermediary, to whom the dangerous thing is delivered by the

author, has knowledge of the danger, it then becomes his duty to make it safe or to prevent it from injuring others, and that if he fails it is then his negligence and not the negligence of the original author, which is the proximate cause of the injury. In this view the first wrong-doer is not relieved because he was not negligent, but because his negligence was not the proximate cause of the injury, and this for the reason that another efficient cause intervened and insulated him from liability. The conclusion of the matter is that an intervening proximate cause is shown by proof that the intermediary had knowledge of the danger, which breaks the casual connection between the original negligence and the injury. Admitting all this, the application of the doctrine to these cases is erroneous. The effect of the majority opinion is that it is incumbent upon the plaintiffs to affirmatively disprove that this particular intervening cause intervened. Innumerable proximate causes of injury might possibly intervene in most any case. Is it a condition of recovery that the plaintiff negative all possible intervening causes? The reasonable rule is, and must be, that the intervening cause asserted here, if available at all, is available only by way of defense, and need not be negatived.

When, as here, the evidence was sufficient to establish the liability of appellant, unless knowledge by the hotel company intervened to relieve it, it is my opinion that such knowledge is not presumed, and need not be disproved in order to make out a case. To require an injured plaintiff, as a condition of his recovery against the original wrongdoer, in cases of this kind, to affirmatively establish lack of knowledge on the part of one or a dozen intermediaries through whom the dangerous thing may have come to him, would in many cases be a bar to recovery, even though such knowledge in fact never existed. When the cases were submitted to the respective juries, no request was made by the elevator company for any instruction relating to knowledge of any defect or danger in the elevator in question on the part of

the hotel company; and, as before stated, there was affirmative evidence that the hotel company had no such knowledge, with no evidence to the contrary. Under a rule of very general application, supported by cases in our own court and elsewhere, too numerous to mention, I think the failure to so instruct, in such case, is not error.

With respect to the Waters Case, it is my opinion that the interpretation placed by the majority upon the statute relating to challenges to the jury is erroneous. The cases cited and relied upon in support of the majority opinion do not deal with statutory provisions like those of this state. There is a marked distinction between the statutes of the different states, which is recognized by the authorities, and which accounts for the apparent conflict of judicial opinion. The provision of the Utah statute (section 6792), "Either party may challenge the jurors, but where there are several parties on either side, they must join in a challenge before it can be made," is not found in any of the statutes considered by the causes relied upon in the majority opinion. Under statutes like ours the authorities seem uniform in holding against separate challenges. In 35 C. J. 409, the distinction is pointed out as follows:

"The statutes sometimes expressly provide that, if there are several parties on either side of a controversy, they must all join in their challenges, and in such case the rule allowing parties appearing separately to interpose separate challenges cannot obtain."

In *Colfax Nat. Bank v. Davis Imp. Co.*, 50 Wash. 92, 96 P. 823, 16 Ann. Cas. 264, it was held, under a statute "providing that either party may challenge the jurors, but, when there are several parties on either side, they shall join in the challenge before it can be made," parties appearing separately cannot interpose separate challenges. In this case the court points out the distinction between the statutes of Wisconsin and Michigan and the statute of Washington, and adds that the great weight of authority (citing numerous cases) is against the decisions of the former states, even under similar statutes.

In *Crandall v. Puget Sound, etc., Co.,* 77 Wash. 37, 137 P. 319, the court again held that, under the Washington statute, defendants in tort, who not only resist the right of plaintiff to recover, but who seek to shift any recovery from one to the other, are not entitled to separate peremptory challenges. To the same effect is *Newell v. Loeb,* 77 Wash. 182, 137 P. 811.

In *San Louis Obispo County v. Simas,* 1 Cal. App. 175, 81 P. 972, the eleventh headnote reads:

"Under Code Civ. Proc. § 601, providing that either party may challenge the jurors, but where there are several parties on either side they must join in a challenge before it can be made, where several parcels of real estate lying in the same county were sought to be condemned for highway purposes in a single proceeding the owners were required to join in their peremptory challenges."

See, also, *Hodges v. So. Pac. Co.,* 3 Cal. App. 307, 86 P. 620.

In *Waters-Pierce Oil Co. v. Burrows,* 77 Ark. 74, 96 S. W. 336, there were several defendants, whether antagonistic or not does not appear. The court said:

"In the impaneling of the jury in the case the trial court refused to allow the Waters-Pierce Oil Company to peremptorily challenge three jurors. The appellant insists that the court erred. But we do not think so. The statutes * * * expressly provide in civil cases that 'each party shall have three peremptory challenges,' and * * * that, 'where there are several persons on the same side, the challenge of one shall be the challenge of all.' All of the defendants are not entitled in the aggregate to more than three peremptory challenges. The statutes do not provide that they shall, in any case, be entitled to more."

In *Cumberland T. & T. Co. v. Ware's Adm'x,* 115 Ky. 581, 74 S. W. 289, it was held, under a statute providing that each party litigant in civil actions shall have the right to three peremptory challenges, and declaring that in all civil cases the clerk shall draw from the box the names of eighteen of the jury and deliver a list to each party, from which the plaintiff and defendant may each strike three, the first twelve names not erased to be the jury, one of three defend-

ants, though he files an affidavit averring that his defense is in conflict with his codefendants, is not entitled to three peremptory challenges alone, but the three together are only entitled to three challenges.

Upon the pleadings and the face of the record, at the time the jury was impaneled, there can be no question but that the two defendants "were on the same side" of the controversy, within the meaning of the statute. Practical reasons suggest that the court ought not look beyond the pleadings, or engage in any collateral inquiry to discover hostility or conflict of interest between defendants, for the purpose of determining the right to challenge jurors. The time consumed and the effort expended in the trial courts in the examination and impaneling of juries is an admitted evil in legal procedure, and is the subject of a very general and just complaint, in view of which the modern tendency is towards diminishing rather than enlarging the participation of litigants in the selection of the jury. To increase the number of challenges, and permit extraneous and collateral inquiries to be introduced, adds to the confusion and intensifies the evil. The procedure in this respect should be simple and expeditious. Besides, the multiplication of challenges on the side of the defense destroys the balance of equality intended to be preserved as between the two opposing sides of the controversy actually to be tried.

The right to challenge jurors peremptorily depends entirely upon statute. The Legislature has undouted power to deny the right altogether, or to allow it under such restrictions as it may prescribe. Under our statute the several parties on either side required to join in a challenge are not merely those friendly to each other, but all of them. I think the trial court committed no error in denying the challenge made by appellant.

Upon the questions to which I have not referred I concur in the majority opinion. I concur in the judgment affirming the Berg Case. I think the Sutton, Snow, and Waters Cases should also be affirmed.